EUGENE R. FURR, Plaintiff v. FONVILLE MORISEY REALTY, INC., KOEPPEL
TENER RIGUARDI, INC., and REGENCY PARK CORPORATION, Defendants

No. COA97-865

(Filed 18 August 1998)

### 1. Brokers— real estate commissions—unlicensed out-of-state and licensed in-state brokers—client relocating to North Carolina

A commission agreement between a North Carolina real estate brokerage and a New York real estate company which was not licensed in North Carolina but which represented a New York company relocating to North Carolina was not void for illegality and was enforceable. Contracts which are illegal are unenforceable, but illegality is a defense only where the party seeking to void the contract is a victim of the substantive evil the legislature sought to prevent. The purpose of N.C.G.S. § 93A-1 is to protect sellers, purchasers, lessors and lessees of real property from fraudulent or incompetent brokers and salesmen and, when the buyer/lessee is an out-of-state investor or corporation with complex interests and concerns best known to its regular brokers in its home state, the interests of the parties are better served if the out-of-state party is allowed to rely on the combined efforts of a local broker and a broker familiar with its particular situation.

### 2. Pleadings— motion to amend—denied—no abuse of discretion

There was no abuse of discretion in an action arising from a disputed commercial real estate commission in the denial of defendant Regency Park's second motion to amend its response to crossclaims where the motion came four years after the initial complaint, after the court had already disposed of several material issues, and after all three defendants had filed motions for summary judgment with respect to their crossclaims.

### 3. Judgments— prejudgment interest—real estate commissions

The trial court properly awarded prejudgment interest at the legal rate in an action involving splitting real estate commissions with an unlicensed out-of-state brokerage where defendant Regency Park contended that it withheld payment based upon an opinion by the North Carolina Real Estate Commission that these

commissions would be unlawful and further that Fonville Morisey had made no demand for payment until the dispute between KTR and the Real Estate Commission was resolved. Fonville Morisey and KTR were denied use of the commissions from the time they became due until paid and Regency Park had full use of the money for the same period of time; interest is the compensation allowed for the use, or forbearance, or detention of money.

### 4. Brokers— real estate commissions—indemnity clause

Defendant-realtors KTR and Fonville Morisey were entitled to judgment as a matter of law dismissing defendant Regency Park's crossclaim for indemnity in an action by a broker to collect a commission. The plain language of the commission agreement indemnity provision applies only to claims for commissions by any other broker; neither of plaintiff's claims are by "any other broker" so as to be included in the indemnification agreement.

### 5. Brokers— commissions—agreement with out-of-state broker—not unfair or deceptive

The trial court did not err by granting summary judgment for defendants Fonville Morisey and KTR on an unfair practices claim arising from the division of commissions with an unlicensed out-of-state broker representing a corporate client relocating to North Carolina.

Appeal by plaintiff from order entered 13 December 1994 by Judge Henry W. Hight, Jr.; appeal by both plaintiff and defendant Regency Park Corporation from order entered 10 April 1995 by Judge Jack A. Thompson; and appeal by defendant Regency Park Corporation from order entered 10 February 1997 by Judge Robert L. Farmer, all in Wake County Superior Court. Heard in the Court of Appeals 2 April 1998.

*Kirk, Kirk, Gwynn & Howell, L.L.P., by Joseph T. Howell, for plaintiff-appellant.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by Pressly M. Millen, Elizabeth L. Riley and Elizabeth J. Hallyburton, for defendant-appellant Regency Park Corporation.*

*Manning, Fulton & Skinner, P.A., by Charles E. Nichols, Jr., for defendant-appellee Fonville Morisey Realty, Inc.*

**FURR v. FONVILLE MORISEY REALTY, INC.**

[130 N.C. App. 541 (1998)]

*Bode, Call & Stroupe, L.L.P., by V. Lane Wharton, Jr., Robert V. Bode, S. Todd Hemphill and Audrey L. Cooper, for defendant-appellee Koeppel Tener Riguardi, Inc.*

*Attorney General Michael F. Easley by Special Deputy Attorney General Thomas R. Miller, and Blackwell M. Brogden, Jr., Chief Deputy Legal Counsel, for North Carolina Real Estate Commission, amicus curiae.*

MARTIN, John C., Judge.

Plaintiff brought this action alleging claims against defendant Fonville Morisey Realty, Inc. ("Fonville Morisey") for breach of contract, recovery in *quantum meruit,* and wrongful discharge from employment; he alleged an additional claim for unfair and deceptive practices in violation of G.S. § 75-1.1 *et seq.* against all three defendants. Each defendant filed answer; defendants Fonville Morisey and Koeppel Tener Riguardi, Inc. ("KTR") asserted cross claims against defendant Regency Park Corporation ("Regency Park") for real estate commissions allegedly due under the terms of a commission agreement, and Regency Park asserted cross claims against Fonville Morisey and KTR for indemnity for the cost of defending plaintiff's suit. Plaintiff appeals from separate orders granting summary judgment in favor of all defendants; defendant Regency Park appeals from orders granting summary judgment in favor of defendants Fonville Morisey and KTR on their cross claims and dismissing its cross claim.

The procedural and evidentiary record in this case is voluminous; it will be summarized only to the extent necessary to a discussion of the various issues raised by these appeals. Plaintiff is a real estate broker licensed in North Carolina and, in the fall of 1990, was affiliated with defendant Fonville Morisey in its commercial leasing division. Plaintiff's agreement with Fonville Morisey provided that he was to receive 50% of commissions paid to Fonville Morisey for sales or leases of property initiated by him. In November 1990, acting upon information provided him by Fonville Morisey, plaintiff contacted Seer Technologies, a software firm located in New York which was considering relocating, and arranged to show Seer representatives lease space available in the Raleigh area. Plaintiff showed SEER's representatives several potential lease spaces at that time, including property owned by defendant Regency Park in Cary.

After this initial meeting, both Seer and KTR, a New York commercial real-estate firm, notified plaintiff that KTR was Seer's real

FURR v. FONVILLE MORISEY REALTY, INC.

[130 N.C. App. 541 (1998)]

estate broker and would be assisting Seer in selecting a site. KTR advised plaintiff that it expected to be involved in, and share in the commission for, any Seer transaction in North Carolina and that Fonville Morisey would be the local broker if a Raleigh/Durham site were selected. KTR's representatives accompanied Seer representatives and plaintiff on subsequent visits to potential lease sites.

KTR sent a proposed "co-brokerage agreement" to Fonville on 25 February 1991. Plaintiff advised his superiors at Fonville Morisey that he was of the opinion the division of a commission with KTR would be unlawful unless KTR was licensed in North Carolina, and returned the agreement to KTR with an addendum requiring that KTR provide Fonville Morisey with a copy of any reciprocity agreement allowing KTR to broker real estate in North Carolina. Upon KTR's objection to the requirement, plaintiff's superior at Fonville Morisey became involved in the negotiations with KTR and subsequently executed the co-brokerage agreement on behalf of Fonville Morisey, without the inclusion of the reciprocity requirement, on 12 April 1991.

Seer executed a lease agreement with Regency Park dated 30 July 1991, yielding a commission to the brokers of $34,557.30. Pursuant to an agreement between Regency Park, Fonville and KTR, Regency Park agreed to pay "one full commission" to Fonville Morisey and KTR for the initial lease and to pay additional commissions for future "renewals, extensions and expansions" by Seer in Regency Park. In addition, the lease between Seer and Regency Park required that Regency Park pay commissions to Fonville and KTR pursuant to the terms of the commission agreement. Regency Park paid the commission due on the initial lease; plaintiff received 50% of Fonville Morisey's share, 25% of the total commission.

---

APPEAL OF DEFENDANT REGENCY PARK

A.

[1] Regency Park first argues the trial court erred in granting summary judgment in favor of KTR and Fonville on their crossclaims seeking commission payments. Regency Park asserts that, despite its agreement with KTR and Fonville, additional commission payments are not owed KTR because it is an unlicensed broker and is therefore not entitled to commissions; it contends Fonville Morisey cannot recover because its contract with KTR was "permeated with illegality" since KTR was not licensed in North Carolina. We disagree.

**FURR v. FONVILLE MORISEY REALTY, INC.**

[130 N.C. App. 541 (1998)]

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 344, 469 S.E.2d 583, 585 (1996) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). The party moving for summary judgment has the burden of "positively and clearly showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law." *James v. Clark*, 118 N.C. App. 178, 180, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995).

Generally, contracts which are illegal are unenforceable. *Financial Services v. Capitol Funds, Inc.*, 288 N.C. 122, 217 S.E.2d 551 (1975). However, illegality is a defense to the enforcement of an otherwise binding, voluntary contract in violation of a statute only where the party seeking to void the contract is a victim of the substantive evil the legislature sought to prevent. *See id.* at 128, 217 S.E.2d at 556. Courts will not extend the terms of a penal statute to avoid a contract unless such a result was within the intent of the legislature in enacting the statute. *Id.* at 129, 217 S.E.2d at 556.

G.S. § 93A-1 provides:

> . . . it shall be unlawful for any person, . . . corporation . . . in this State to act as a real estate broker or real estate salesman, or directly or indirectly to engage or assume to engage in the business of real estate broker or real estate salesman or to advertise or hold himself or themselves out as engaging in or conducting such business without first obtaining a license issued by the North Carolina Real Estate Commission . . . under the provisions of this Chapter.

The purpose of this act is to "protect sellers, purchasers, lessors and lessees of real property from fraudulent or incompetent brokers and salesmen." *McArver v. Gerukos*, 265 N.C. 413, 416, 144 S.E.2d 277, 280 (1965). "It must be construed with a regard to the evil which it is intended to suppress," and as a criminal offense, this act must be strictly construed so as not to extend it to activities and transactions not intended by the Legislature to be included. *Id.* at 416-17, 144 S.E.2d at 280.

To determine whether avoidance of the commission contract was within the intent of the legislature in enacting G.S. Chapter 93A,

FURR v. FONVILLE MORISEY REALTY, INC.

[130 N.C. App. 541 (1998)]

we must consider how the law functions to protect the public from fraud and abuse. Real estate law and administrative regulations are highly complex and vary widely from state to state. Because of the usual size and complicated nature of real estate transactions, where there are wide disparities of knowledge between the buyer/lessee, seller/lessor and broker, the legislature has committed those transactions to the rigorous oversight and regulation of the Real Estate Commission. The Commission's primary means of injecting its authority is through the presence of a broker licensed by and accountable to the Commission, who is required to follow regulations and guidelines designed to protect the interests of the parties involved in the transaction, as well as the broker's own interests.

The system works well to ensure that transactions are completed in accordance with North Carolina law. However, when, as happens with increasing frequency in our state, the buyer/lessee is an out-of-state investor or corporation with complex interests and concerns best known to its regular brokers in its home state, the interests of the parties are better served if the out-of-state party is allowed to rely on the combined efforts of a local broker and a broker familiar with its particular situation. The North Carolina broker can then make certain that the guidelines, regulations and laws of this State are observed while the out-of-state broker can advise the foreign investor on matters critical to its overall interests. In such an arrangement, the North Carolina licensed broker will be legally and professionally responsible for the acts of the cooperating out-of-state broker as well as for its own acts in the venture. Such an arrangement seems to us to be clearly in line with the legislative intent embodied in Chapter 93A of the General Statutes; indeed, the complete exclusion of its regular broker from a transaction may well render the foreign buyer/lessee more vulnerable to fraud.

As the Court of Appeals of Tennessee stated in *Bennett v. MV Investors*, 799 S.W.2d 221, 225 (Tenn. App. 1990), "In this modern-day world, this Court can take judicial notice of the fact that Tennessee real estate is bought and sold on a daily basis by persons and entities not only from foreign states, but from foreign countries. Interstate real estate transactions should be encouraged, not discouraged." A number of other states have reached similar conclusions. *See Tassy v. Hall*, 429 So.2d 30 (Fla. App. 1983) (a statute prohibiting unlicensed brokers from collecting commissions did not apply where an out-of-state broker worked with a licensed Florida broker); *Bell v.*

*United Farm Agency, Inc.*, 296 P.2d 149 (Okla. 1956) (division of a fee between licensed and out-of-state broker did not violate statute prohibiting sharing fees with unlicensed individuals); *Bowlerama, Inc. v. Woodside Realty Co.*, 752 P.2d 1377 (Wyo. 1988) (the presence of a licensed broker upheld statutory purpose of protecting public from unscrupulous or incompetent brokers).

Regency Park directs our attention to North Carolina cases holding that unlicensed contractors are not entitled to enforce construction contracts, even when unlicensed contractor might be in partnership or performing work with a licensed contractor, as enforcement of the contract would be against public policy. *See Hawkins v. Holland*, 97 N.C. App. 291, 388 S.E.2d 221 (1990). However, that fact situation is entirely distinguishable from the situation where two brokers work in tandem to devise a single lease on behalf of a single client. The situation of an out-of-state real estate broker, who serves his or her foreign client as an expert with knowledge of the client's business, needs and holdings, more nearly resembles that of an attorney, who is licensed in a foreign state, is permitted to participate, with a North Carolina attorney, in rendering advice to and representing the interests of his client in this State. Notwithstanding Regency Park's arguments to the contrary, the commission agreement in this case was not, as a matter of law, void as against public policy.

We have examined the cases cited by Regency Park in support of its position and we find them both distinguishable and unpersuasive. The two key cases which Regency Park cites, *McArver, supra,* and *Gower v. Stout Realty, Inc.*, 56 N.C. App. 603, 289 S.E.2d 880 (1982), are distinguishable in that neither of these cases involved a licensed North Carolina broker who worked with a broker licensed in another state to represent an out-of-state client in North Carolina. In *McArver,* three individuals agreed to obtain options on certain tracts of land and resell the options for profit, equally dividing any profits, commissions or fees received in the transaction. Plaintiff, who was not a licensed broker, brought the suit to recover a share of a commission or fee received by defendant for "putting together" a transaction. The Supreme Court, after stating the purpose of Chapter 93A, held that contracts made in violation of the statute were not enforceable, but found the contract in that case not in violation of the statute. "The statute is not concerned with a licensed broker's sharing of his commissions with an unlicensed associate, unless the reason for such sharing is the performance by the unlicensed associate

of acts which violate the statute." *Id.* at 419, 144 S.E.2d at 282. Here, where KTR is licensed in another state and acts, in collaboration with a broker licensed in this State, in representing its regular client in a transaction occurring in North Carolina, we discern a violation of neither the policy nor the purpose of the statute.

In *Gower*, an unlicensed California broker agreed to find a buyer for a North Carolina property. Rather than retain a local broker to represent one of its clients, the California broker performed all of the functions of a broker with neither the advice nor the assumption of responsibility of a licensed North Carolina broker. By contrast, in the present case, there has been no showing that KTR acted at any point as a broker without the full knowledge, advice, and consent of Fonville Morisey. The direct involvement of a licensed North Carolina broker at all stages of the transaction provides the protection of the public interest mandated by G.S. Chapter 93A.

Therefore, we hold the commission agreement is not void for illegality, is enforceable by both KTR and Fonville Morisey, and those parties are entitled to recover commissions which Regency Park agreed to pay pursuant thereto. The orders granting summary judgment in favor of KTR and Fonville Morisey are affirmed.

B.

[2] On 20 December 1996, Regency Park moved for leave to file a Second Amended Response to the cross claims asserted by KTR and Fonville Morisey to include an additional affirmative defense based on illegality of contract. The motion was denied and Regency Park assigns error.

The denial of a motion to amend "is accorded great deference and will not be overturned absent an abuse of discretion." *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997), *disc. review denied*, 347 N.C. 670, 500 S.E.2d 84 (1998). "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Id.* (quoting *White v. White*, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985)). We discern no abuse of discretion here. Regency Park's second motion to amend came four years after the initial complaint, after the court had already disposed of several material issues, and after all three defendants had filed motions for summary judgment with respect to their respective cross claims. Such eleventh-hour amendments are generally disruptive to the orderly disposition

## FURR v. FONVILLE MORISEY REALTY, INC.

of cases and are often unfair to other parties and the attorneys in their preparation to prosecute or defend the action. Barring unusual circumstances such as the revelation of new information, which was not the case here, the denial of such a motion is rarely so unreasonable as to amount to an abuse of discretion. This assignment of error is overruled.

### C.

**[3]** Alternatively, Regency Park argues the trial court erred in awarding KTR and Fonville prejudgment interest on the additional commission due from the dates upon which the respective addendum was executed. Regency Park contends it withheld payment of the commission to KTR based upon an opinion by the North Carolina Real Estate Commission that payment of such commissions would be unlawful because KTR was not licensed in North Carolina. Regency Park also asserts it should not be required to pay interest for this period to Fonville Morisey because Fonville Morisey made no demand for payment of commissions until the dispute between KTR and the North Carolina Real Estate Commission was resolved by a Consent Judgment entered 23 September 1996.

"In breach of contract actions, N.C. Gen. Stat. § 24-5 authorizes the award of pre-judgment interest on damages from the date of the breach at the contract rate, or the legal rate if the parties have not agreed upon an interest rate." *Members Interior Construction v. Leader Construction Co.*, 124 N.C. App. 121, 125, 476 S.E.2d 399, 402 (1996), *disc. review denied*, 345 N.C. 754, 485 S.E.2d 56 (1997); N.C. Gen. Stat. § 24-5 (1991). " 'Interest is the compensation allowed by law, or fixed by the parties, for the use, or forbearance, or detention of money.' " *Id.* (quoting *Thompson-Arthur Paving Co. v. Lincoln Battleground Assoc.*, 95 N.C. App. 270, 282, 382 S.E.2d 817, 824 (1989)). " '[I]nterest . . . means compensation allowed by law as additional damages for the *lost use of money* during the time between the accrual of the claim and the date of the judgment.' " *Id.* (quoting 22 AM.JUR.2D *Damages* § 648 (1988)).

In this case, Fonville Morisey and KTR were denied the use of the commissions from the time they became due, i.e., the date upon which the respective lease addendums were executed, until paid; conversely, Regency Park had full use of the money for the same period of time. Pursuant to G.S. § 24-5, the trial court properly awarded pre-judgment interest at the legal rate.

D.

**[4]** Finally, Regency Park argues the trial court erred in failing to require Fonville and KTR to indemnify it for expenses incurred in defending plaintiff's claims. The commission agreement provides:

> [Fonville Morisey] and KTR shall indemnify and hold [Regency Park] harmless from and against claims for brokerage commissions (including reasonable attorneys' fees and expenses up to the amount of the commission actually paid to the Brokers) claimed by any other broker with whom Brokers have dealt in connection with the lease of the office space in Regency Park by SEER Technologies, Inc.

The "court's primary purpose in construing a contract of indemnity is to ascertain and give effect to the intention of the parties, and the ordinary rules of construction apply." *Dixie Container Corp. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968). The plain language of the foregoing contract provision applies only to claims for brokerage commissions claimed by any other broker.

Plaintiff's original claim against Regency Park alleged unfair and deceptive practices and is not covered by the provision because it is not a claim for commissions. In his amended complaint, plaintiff asserted an obligation of Regency Park to pay commissions to Fonville Morisey. Neither plaintiff's claim that Regency Park owed commissions to Fonville and KTR, nor the claims of KTR and Fonville Morisey are claims by "any other broker" so as to be included in the indemnification agreement. KTR and Fonville Morisey were entitled to judgment as a matter of law dismissing Regency Park's cross claim for indemnity.

## PLAINTIFF'S APPEAL

**[5]** Plaintiff gave notice of appeal from the 13 December 1994 order entered by Judge Hight and from the 10 April 1995 order entered by Judge Thompson. In his first assignment of error, plaintiff asserts the trial court erred by entering its 13 December 1994 order granting Regency Park's motion for summary judgment dismissing plaintiff's claims against it. Plaintiff has neither set forth the assignment of error in his brief nor presented any argument in support thereof. The assignment of error is, therefore, deemed to have been abandoned, N.C.R. App. P. 28(a) and (b)(5), and plaintiff's appeal from the 13 December 1994 order is dismissed.

**FURR v. FONVILLE MORISEY REALTY, INC.**

[130 N.C. App. 541 (1998)]

By his remaining assignment of error, plaintiff contends the trial court erred in granting summary judgment in favor of KTR and Fonville Morisey dismissing his claims alleging unfair and deceptive practices. The elements of a claim for unfair and deceptive practices in violation of G.S. § 75-1.1 are: "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991). With respect to the first element, a practice is unfair if it is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers." *Branch Banking and Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 700, *disc. review denied*, 332 N.C. 482, 421 S.E.2d 350 (1992). A practice is deceptive if it "has the capacity or tendency to deceive." *Id.* at 61-2, 418 S.E.2d at 700. A defendant may meet his burden of showing that summary judgment is proper by showing that an essential element of the plaintiff's case is nonexistent. *James v. Clark*, 118 N.C. App. at 181, 454 S.E.2d at 828.

Plaintiff argues that Fonville and KTR committed an unfair and deceptive practice by entering into the agreement to share commissions on the Seer transactions because the agreement resulted from illegal brokerage activity by KTR in violation of G.S. § 93A-1. We have heretofore decided, however, that KTR's involvement, as a co-broker with Fonville, in the Seer transaction did not violate the provisions of the statute and was not illegal. Neither can the acts of defendants KTR and Fonville in entering into the commission agreement be said to have been "immoral, unethical, oppressive, or unscrupulous" conduct, nor was the commission arrangement injurious to customers or capable of deception. Therefore, defendants have met their burden of showing that an essential element of plaintiff's claim is nonexistent and they are entitled to judgment as a matter of law. Summary judgment in favor of Fonville and KTR as to plaintiff's claim alleging unfair and deceptive practices is affirmed.

Appeal by defendant Regency Park Corporation—Affirmed.

Appeal by plaintiff from 13 December 1994 Order—Dismissed.

Appeal by plaintiff from 10 April 1995 Order—Affirmed.

Judges WYNN and WALKER concur.