**KOLB v. SCHATZMAN & ASSOCS., L.L.C.**

[150 N.C. App. 94 (2002)]

MARGARET L. KOLB AND LUCY ZANTOUT, PLAINTIFFS v. SCHATZMAN & ASSOCIATES, L.L.C. AND PHILIP KING, DEFENDANTS

No. COA01-277

(Filed 7 May 2002)

**Contracts— legality—extrication of individuals from another country**

The trial court did not err by granting defendant's motion for summary judgment on its counterclaim for breach of express contract against plaintiff and by concluding that the underlying oral contract requiring defendant to attempt to extricate plaintiff's daughter and three grandchildren from Lebanon and return them to the United States was legal and enforceable, because: (1) defendant performed as agreed under the oral contract, and plaintiff did not; and (2) there is no evidence that plaintiff and defendant entered into an illegal contract.

Appeal by plaintiffs from judgment entered 4 December 2000 by Judge Russell G. Walker, Jr. in Forsyth County Superior Court. Heard in the Court of Appeals 9 January 2002.

*Law Offices of William F. Maready, by William F. Maready and Celie B. Richardson, for plaintiff-appellants.*

*Sharpless & Stavola, P.A., by Joseph M. Stavola and Joseph P. Booth, III, for defendant-appellees.*

HUDSON, Judge.

Plaintiffs appeal two Orders and Judgments entered in favor of defendants Schatzman & Associates, L.L.C. ("defendant"), a private investigative and security service company, and Philip L. King ("King"). The court granted defendant's motion for summary judgment on plaintiffs' claims and on defendant's counterclaim for breach of contract. The court also granted King's motion for summary judgment on plaintiffs' claims against him. We briefly review the facts and procedural history before addressing the sole issue on appeal.

In April 1986, Lucy Kolb ("Lucy"), the daughter of Margaret Kolb ("Margaret"), married Bassam Zantout ("Bassam"), a citizen of Lebanon, and resided with him in North Carolina until November 1996. The couple had three children who maintained both American

and Lebanese citizenship. Bassam found a job in Dubai, UAE, and the Zantouts and their three children moved there in 1996. When Bassam lost his job, the Zantouts returned to North Carolina in the summer of 1998 and then decided to move to Lebanon in October 1998. Lucy did not have citizenship in Lebanon, where laws required that she obtain her husband's assistance in maintaining her visa so that she could remain in the country. Soon after they arrived in Lebanon, the Zantouts' relationship deteriorated and Bassam became increasingly abusive to Lucy and their three children. Bassam refused to renew Lucy's visa and informed her that she would be expelled from the country on 2 March 1999, but that their children would stay with him.

In February 1999, Lucy escaped with the children from the Zantout family home and sought help at the American embassy in Beirut, Lebanon. Lucy discovered that Bassam had placed a block on Lucy's and the children's passports. Lucy contacted her mother, Margaret, and asked her to help them leave Lebanon. Margaret, fearing that Bassam was tapping her phone, contacted William Schatzman at Schatzman & Associates, L.L.C. When Mr. Schatzman came to her home to check her phone for a wire tap, Margaret explained Lucy's problem to him, and he indicated that his company could help. Margaret and defendant entered into an oral agreement, whereby she agreed to pay defendant a $15,000 retainer plus additional fees and expenses. Defendant agreed to retain King, a former FBI Agent and independent contractor, to "provide assistance to [Lucy and the children] in obtaining exit from Lebanon, if possible."

King found Lucy and the children in Lebanon, and after analyzing possible escape scenarios, decided to take them out of Lebanon through Syria on 1 March 1999. King hired drivers to take him, Lucy, and the children into Syria. They had difficulties at the border, but were allowed to enter. However, when they later attempted to exit Syria, they were stopped because their passports had not been properly stamped at the Lebanon-Syria border. They were not allowed to leave Syria for most of March 1999. During this time, Margaret became increasingly anxious that Lucy and the children would not return home to North Carolina. She retained Michael Taylor of American International Security Corporation in Boston for $155,000 to get Lucy and the children out of Syria. Taylor found King, Lucy, and the children, but encountered difficulty extricating them from Syria. Finally, on 31 March 1999, a Syrian judge deported King, Lucy, and the children, and they flew from Damascus, Syria, to Germany, and then to Greensboro, North Carolina on 1 April 1999.

Margaret and Lucy filed this lawsuit on 15 October 1999. Margaret alleged claims against defendant for (1) negligence, (2) breach of contract, (3) fraud, (4) negligent infliction of emotional distress, and (5) unfair and deceptive trade practices. Margaret alleged claims against King for (1) breach of contract, (2) negligence, and (3) negligent infliction of emotional distress. Lucy alleged claims against defendant and King for negligent infliction of emotional distress. Defendant answered denying all liability, asserting eleven affirmative defenses, and alleging as counterclaims: (1) breach of express contract against Margaret, (2) *quantum meruit* against Margaret, and (3) *quantum meruit* against Lucy. King answered denying all liability and asserting fourteen affirmative defenses. After discovery and preliminary proceedings, the parties argued their dispositive motions before the trial court on 14 November 2000.

The trial court granted defendant's motion for summary judgment on all of both plaintiffs' claims against defendant, and on defendant's counterclaim against Margaret for breach of contract. The court also allowed King's motion for summary judgment as to all claims of both plaintiffs against him. The court entered judgment against Margaret for $47,662.41 plus interest, equal to the balance that she owed defendant under the oral contract, and dismissed the *quantum meruit* claims as moot. Both plaintiffs gave notice of appeal of all rulings.

However, the appellants' brief argues only that the money judgment against Margaret was erroneous because it amounted to enforcement of an illegal contract. All other issues raised by plaintiffs are deemed abandoned. Therefore, pursuant to Rule 10 of the North Carolina Rules of Appellate Procedure (1999), our review is limited to Margaret's appeal of the summary judgment against her on defendant's counterclaim for breach of contract.

On appeal, "[i]t is well established that the standard of review of the grant of a motion for summary judgment requires a two-part analysis of whether, '(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law.' " *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (citing *Gaunt v. Pittaway*, 139 N.C. App. 778, 784, 534 S.E.2d 660, 664 (2000), *cert. denied,* —— U.S. ——, 151 L. Ed. 2d 261 (2001)), *aff'd*, 353 N.C. 445, 545 S.E.2d 210 (2001); *see also* N.C.R. Civ. Proc. 56 (1999). "An

KOLB v. SCHATZMAN & ASSOCS., L.L.C.

[150 N.C. App. 94 (2002)]

issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972). The burden of proof is on the party moving for summary judgment, here the defendant Schatzman & Associates, L.L.C., to show that summary judgment is appropriate. *See Adams v. Jefferson-Pilot Life Ins. Co.*, 148 N.C. App. ——, ——, 558 S.E.2d 504, 506 (2002). Additionally, the record must be reviewed in the light most favorable to the non-moving party. *See id.*

We first examine whether the record presents any genuine issues of material fact. In both Margaret's complaint and defendant's counterclaims, the parties alleged that there was a contract between Margaret and defendant. In her "Second Claim for Relief: Breach of Contract," Margaret contended:

37. In about February 1999, Margaret (plaintiff) entered into an agreement with defendant whereby defendant agreed to extricate Lucy and her children from Beirut, Lebanon and return them to the United States in return for a fee to be paid by Margaret.

38. Margaret paid the fee required by defendant in accordance with her agreement with defendant.

39. Defendant failed to return Lucy and the children to the United States and instead, caused them to be detained in Syria.

40. Defendant's failure to return Lucy and the children to the United States constitutes a breach of its contract with Margaret.

In its "First Counterclaim: Breach of Express Contract," defendant contended:

29. By mutual agreement and assent of Ms. Margaret Kolb on behalf o[f] herself, and Mr. Bill Schatzman on behalf of Schatzman & Associates, LLC, on or about February 15, 1999 Ms. Kolb entered into a[n] agreement with Schatzman & Associates, LLC, whereby Schatzman & Associates, LLC, would undertake to assist Ms. Zantout and the Children obtain exit from Lebanon, to include, among other things, one or more of the following tasks ("Contract"):

  a. Travel to Beirut, Lebanon, and locate Ms. Lucy Kolb
     Zantout and the Children;

  b. After locating Ms. Zantout and the Children, assist Ms.
     Zantout and the Children obtain exit from Lebanon before
     Ms. Zantout's Lebanese travel visa expired sometime dur-
     ing late February, 1999;

  c. Obtain or otherwise purchase whatever goods or services
     were reasonably necessary to assist in the task of helping
     Ms. Zantout and the Children obtain exit from Lebanon;
     and

  d. Take whatever steps or measures were determined to be
     reasonably necessary in order to assist Ms. Zantout and
     the Children in returning from the Middle East to Winston
     Salem, North Carolina.

Defendant also contended that the parties agreed upon the rates for
services at $75.00 per hour for all services not requiring travel outside
of the United States, and $750.00 per day plus costs and expenses for
all services provided outside of the United States. Margaret admitted
that she agreed to the fee schedule asserted by defendant, but that
"she agreed to pay the fees stated in this paragraph if defendant met
its obligation under her agreement with defendant." The remaining
issue is whether defendant completed its portion of the contract with
Margaret, thus entitling it to payment.

In her deposition, Margaret testified concerning the oral contract
made with defendant:

     Q. Sure. You've told me that Mr. Schatzman made no guar-
     anties to you with respect to when, if at all, Lucy and the children
     would be back in Forsyth County, correct?

     A. Yes. He—he didn't say he could guarantee it, because he
     wasn't there to make the contacts himself.

     Q. And my question to you, then, is, Isn't it fair to say, then,
     that Mr. Schatzman had told you that Mr. King would go over
     there and do the best that he could to try and get Lucy and the
     grandchildren back in—back to Forsyth County as soon as possi-
     ble, and that's what they would try and do?

     A. Yes. That's what they wanted to do, and that's what he told
     me and that King was very positive in the fact that this would—

KOLB v. SCHATZMAN & ASSOCS., L.L.C.

[150 N.C. App. 94 (2002)]

was going to work and he had the contacts and it would be no problem.

As indicated by her own testimony, Margaret acknowledged that defendant never promised to get Lucy and her children out of Lebanon, only that defendant and its associate, King, would do the best they could to extricate them. Margaret also acknowledged that defendant and King devised several plans to extricate the family and eventually left Lebanon through the Syria border.

Thus, we conclude that there is no genuine dispute that Margaret entered into a contract with defendant, whereby defendant agreed to attempt to get Lucy and her children out of Lebanon and into the United States, and Margaret agreed to pay a $15,000 retainer fee, hourly and daily rates depending on where the services were provided, plus fees and costs. Margaret paid the retainer fee, and defendant attempted to extricate Lucy and her children from Lebanon. Because defendant performed as agreed under the oral contract, and Margaret did not, the trial court properly allowed defendant's motion for summary judgment on its counterclaim for breach of express contract.

However, Margaret contends that the contract with defendant, if any, was illegal and therefore unenforceable. Defendant argues that the issue of illegality is not properly before us, because it was not raised in the trial court. In that the plaintiff's Reply to the Counterclaims specifically alleges that illegal acts were carried out, we disagree. "Generally, contracts which are illegal are unenforceable." *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 545, 503 S.E.2d 401, 405 (1998), *disc. rev. improv. allowed*, 351 N.C. 41, 519 S.E.2d 314 (1999). Here, despite the allegations in her Reply, we find no evidence that Margaret and defendant entered into an illegal contract. Margaret testified during her deposition about possible actions that might be taken by defendant's agents, as follows:

Q. And tell me a little bit about this—You had said that it was your understanding that Mr. Schatzman had instructed Phil King not to do anything illegal himself, I think, is the way you described it.

A. Uh-huh.

Q. What is your understanding of what those instructions were about?

A. Well, obviously, with the children having a block on their passports, however they got out would have to be illegal-

Q. And you knew that?

A. —perhaps, although the embassy issued them new passports. But those new passports, therefore, had no entry stamps into Lebanon for the children. They were just empty passports.

But that King himself was not to do anything illegal that would get King into trouble, that he could arrange, and other people would do the dirty work, should I say, and King would keep his hands clean.

The contract between Margaret and defendant required defendant to attempt to extricate Lucy and her three children from Lebanon and return them to the United States. There was no evidence that the contract, when entered, provided for illegal activity, and no evidence beyond speculation that defendant's agents broke any laws attempting to help Lucy and the children. Eventually, Lucy and the children were deported from Syria by a Syrian judge, apparently in accordance with Syrian law. Even though Margaret states that "obviously, with the children having a block on their passports, however they got out would have to be illegal," the children and Lucy left Lebanon through a border checkpoint with Syria, Syrian officials inspected the family's passports and allowed them to enter the country. The record reflects that they left Lebanon on 1 March 1999, when Lucy's visa had not yet expired, and the record does not reflect what, if any, illegal acts were purportedly committed. Margaret has not shown that she contracted for the performance of illegal acts in entering the contract with defendant to attempt to extricate Lucy and the children. We conclude that the record does not establish that the contract between defendant and Margaret was illegal or unenforceable.

In sum, we find that the trial court properly granted defendant's motion for summary judgment on its counterclaim for breach of express contract against Margaret and that the underlying contract was legal and enforceable.

Affirmed.

Judges WYNN and THOMAS concur.