JUSTIN WAYNE NOBLE AND MATTHEW ALLEN NOBLE, PLAINTIFFS v. HOOTERS OF
GREENVILLE (NC), LLC AND HOOTERS OF AMERICA, INC., DEFENDANTS

No. COA08-1144

(Filed 18 August 2009)

**Unfair Trade Practices— lack of standing—failure to demon-
strate conduct amounting to inequitable assertion of
power or actions with capacity or tendency to deceive**

The trial court did not err by granting defendants' motions to
dismiss plaintiffs' claims for unfair and deceptive trade practices
(UDTP) under N.C.G.S. § 75-1.1 arising from defendants' sale and
service of the equivalent of 58 beers during a five-hour period to
plaintiff patrons and the subsequent failure to undertake reason-
able measures to prevent the patrons from leaving the restaurant.

Appeal by Plaintiffs from order entered 3 June 2008 by Judge
Paul L. Jones in Greene County Superior Court. Heard in the Court of
Appeals 26 February 2009.

*White & Allen, P.A., by Matthew S. Sullivan, and Abrams &
Abrams, P.A., by Douglas B. Abrams and Margaret S. Abrams,
for Plaintiffs.*

*Guthrie, Davis, Henderson & Staton, P.L.L.C., by Dennis L.
Guthrie, John H. Hasty, and Justin N. Davis, for Defendant
Hooters of Greenville (NC), LLC.*

*Arthur A. Vreeland for Defendant Hooters of America, Inc.*

STEPHENS, Judge.

*I. Procedural History*

On 15 November 2005, Justin Wayne Noble and Matthew Allen
Noble ("Plaintiffs") filed separate complaints against Jonathan Lee
Sugg, the driver of an automobile in which Plaintiffs had been pas-
sengers, for severe injuries arising out of an automobile accident that
occurred on 30 December 2003. The complaints alleged that Sugg had
operated the motor vehicle negligently, although the complaints did
not allege that Sugg was intoxicated at the time of the accident, or
that his intoxication was a cause of the accident. Plaintiffs' motions
to amend their respective complaints to add Hooters of Greenville
(NC), L.L.C. ("HOG") as a defendant were allowed on 22 May 2006.

The amended complaints alleged that HOG "by and through the actions and inactions of its employees . . . was negligent" and that "as a direct and proximate result of the actions and inactions of [HOG], Plaintiff[s] sustained severe . . . injuries[.]" Plaintiffs' motions to amend their respective complaints a second time to add Hooters of America, Inc. ("HOA") as a defendant were allowed on 18 December 2006. This second amended complaint included a claim against both HOG and HOA for violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et. seq.* ("UDTPA" or "the Act"), and alleged that the violation of the Act "was a proximate cause of the injuries to Plaintiff[s]."

On 29 August 2007, Plaintiffs' separate civil actions against HOG and HOA (collectively, "Defendants") were consolidated for discovery and trial. HOG and HOA moved to dismiss Plaintiffs' Chapter 75 claims pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) for failure to state a claim upon which relief can be granted. After a hearing, the trial court allowed Defendants' motions and entered an order on 3 June 2008 dismissing Plaintiffs' Chapter 75 claims.[1] The trial court certified the case for immediate appellate review under N.C. Gen. Stat. § 1A-1, Rule 54(b) (2007). From the order dismissing Plaintiffs' Chapter 75 claims, Plaintiffs appeal.

*II. Factual Allegations*

Plaintiffs allege the following: On 30 December 2003, Justin Wayne Noble, Matthew Allen Noble, Jonathan Lee Sugg, and Joseph Shaun Thomas (collectively, "the patrons") sat together at the Hooters restaurant in Greenville, North Carolina, operated by HOG. HOG is solely owned and managed by HOA. Martha Barrera, a waitress at the Greenville Hooters, served the patrons from approximately 11:45 a.m. to 2:00 p.m. Before Barrera's shift was over, Barrera printed the patrons' bill so she could " 'cash[] out' " and allow a new waitress to take over serving the patrons. The bill indicated that the patrons had been served the equivalent of 35 beers. At or around the time Barrera printed the bill, some of the patrons inquired about ordering more beer. Barrera asked the manager on duty about the appropriateness of serving the patrons additional alcohol. The manager approved the service of additional alcohol to the patrons.

After Barrera " 'cashed out' " with the patrons, Liza Davis, also a waitress at the Greenville Hooters, was assigned to serve the patrons.

---

1. The order does not disclose the basis or rationale for the trial court's ruling.

Barrera notified Davis of the patrons' food and alcohol consumption. Between approximately 2:00 and 5:00 p.m., Davis served the patrons the equivalent of 23 beers.

At approximately 5:00 p.m, the patrons left the Greenville Hooters in a vehicle owned by Thomas but driven by Sugg. No employee of Hooters attempted to stop the patrons from leaving or driving. At approximately 5:35 p.m., Sugg lost control of the vehicle on Rural Paved Road 1408 in Greene County, North Carolina, causing the vehicle to run off the road and flip four times. Plaintiff Justin Wayne Noble was thrown from the vehicle and sustained serious injuries including paraplegia, multiple vertebral fractures, pneumothorax, and multiple rib fractures. Plaintiff Matthew Allen Noble was also thrown from the vehicle and sustained serious injuries including a closed head injury resulting in brain injury and cerebral edema, respiratory failure, multiple rib fractures, and a fracture of the L2 vertebra.

### III. Discussion

Plaintiffs contend the trial court erred in granting Defendants' motions to dismiss Plaintiffs' claims for unfair or deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1. We disagree with Plaintiffs and affirm the trial court's order.

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the pleading against which the motion is directed. *Eastway Wrecker Serv., Inc. v. City of Charlotte*, 165 N.C. App. 639, 647, 599 S.E.2d 410, 415 (2004), *aff'd per curiam*, 360 N.C. 167, 622 S.E.2d 495 (2005). "Rule 12(b)(6) generally precludes dismissal except in those instances where the face of the complaint discloses some insurmountable bar to recovery." *Meadows v. Iredell Cty.*, 187 N.C. App. 785, 787, 653 S.E.2d 925, 927 (2007) (internal quotation marks and citations omitted), *disc. review denied*, 362 N.C. 236, 659 S.E.2d 735 (2008). The complaint is to be liberally construed in ruling upon a Rule 12(b)(6) motion, and it should not be dismissed unless it appears to a certainty that the plaintiff is entitled to no relief under any set of facts which could be proved in support of the claim. *Jenkins v. Wheeler*, 69 N.C. App. 140, 142, 316 S.E.2d 354, 356, *disc. review denied*, 311 N.C. 758, 321 S.E.2d 136 (1984). A motion to dismiss is properly granted if the complaint alleges mere conclusions of law that are unsupported by the facts alleged. *Garvin v. City of Fayetteville*, 102 N.C. App. 121, 123, 401 S.E.2d 133, 135 (1991).

One insurmountable bar to recovery which may be disclosed on the face of a complaint is a lack of standing. Such a bar to recovery is properly challenged by a Rule 12(b)(6) motion. *Meadows*, 187 N.C. App. at 787, 653 S.E.2d at 927. Chapter 75 of our General Statutes prohibits unfair acts which undermine ethical standards and good faith between persons engaged in business dealings. *McDonald v. Scarboro*, 91 N.C. App. 13, 18, 370 S.E.2d 680, 683, *disc. review denied*, 323 N.C. 476, 373 S.E.2d 864 (1988). N.C. Gen. Stat. § 75-16 governs the determination of standing for redress of Chapter 75 violations:

> If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done . . . .

N.C. Gen. Stat. § 75-16 (2007). Thus, N.C. Gen. Stat. § 75-16 confers standing to bring a UDTPA claim on "any person" who is "injured" as a result of a "violation" of the provisions of Chapter 75. Accordingly, in order to determine whether Plaintiffs had standing to bring their UDTPA claim in this case, we must determine whether Plaintiffs' complaint alleged facts sufficient to establish that their injuries were the result of a "violation" of Chapter 75.

Pursuant to N.C. Gen. Stat. § 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a) (2007). The elements of a claim for unfair or deceptive trade practices are: " '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.' " *Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998) (quoting *Spartan Leasing v. Pollard*, 101 N.C. App. 450, 460-61, 400 S.E.2d 476, 482 (1991)), *disc. review improvidently allowed*, 351 N.C. 41, 519 S.E.2d 314 (1999).

"The Act does not . . . define an unfair or deceptive act, nor is any precise definition of the term possible." *Bernard v. Cent. Carolina Truck Sales, Inc.*, 68 N.C. App. 228, 229-30, 314 S.E.2d 582, 584 (quotation marks and citation omitted), *disc. rev. denied*, 311 N.C. 751, 321 S.E.2d 126 (1984). The North Carolina Supreme Court has stated that "[a] party is guilty of an unfair act or practice when it engages in

NOBLE v. HOOTERS OF GREENVILLE (NC), LLC

[199 N.C. App. 163 (2009)]

conduct which amounts to an inequitable assertion of its power or position." *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 264, 266 S.E.2d 610, 622 (1980), *overruled in part on other grounds by Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 374 S.E.2d 385 (1988). Furthermore, this Court has explained that "[a] deceptive [trade] practice is one that possesses the tendency or capacity to mislead, or creates the likelihood of deception." *Miller v. Rose*, 138 N.C. App. 582, 592, 532 S.E.2d 228, 235 (2000) (internal brackets, quotation marks, and citations omitted). The facts surrounding the transaction and the impact on the marketplace determine whether a particular act is unfair or deceptive, and this determination is a question of law for the court. *Bernard*, 68 N.C. App. at 230, 314 S.E.2d at 584.

In Plaintiffs' second amended complaint, Plaintiffs incorporated the factual allegations constituting their negligence claim, and alleged that such allegations also constituted a violation of the UDTPA. In essence, Plaintiffs alleged that Defendants' sale and service of the equivalent of 58 beers during a five-hour period to the patrons, and Defendants' subsequent failure to undertake reasonable measures to prevent the patrons from leaving the restaurant, constitute unfair or deceptive acts within the meaning of Chapter 75. In their brief to this Court, Plaintiffs argue that the following "summary" of allegations "show the nature of the Chapter 75 violations" by Defendants:

(1) The Hooters Restaurant in Greenville, North Carolina is a licensed permittee and provider of alcohol for on-premises consumption under North Carolina law []; (2) Hooters employees were trained in safe and responsible alcohol service and Hooters had company policies in place concerning safe alcohol practices, including a one-pitcher rule that limited the consumption of alcohol to any one patron to one pitcher no matter how long the patron was there []; (3) As a Licensee, Hooters was subject to numerous North Carolina statutes, rules, and regulations concerning the sale and service of alcohol []; (4) The public policy of North Carolina is to protect citizens and patrons of Hooters by regulating the sale of alcohol []; (5) Patrons of Hooters are entitled to rely upon Hooters complying with North Carolina statutes and regulations governing the sale and service of alcohol []; (6) Hooters markets and promotes its services and goods by the Hooters concept, including the "Hooters Girls" []; (7) That Hooters violated North Carolina statutes, rules, and regulations, as well as Hooters' company policies in dealing with Plaintiffs[]

and their companions []; (8) That the actions of Hooters were unfair, deceptive, immoral, unethical, unscrupulous, and substantially injurious to consumers, so that Hooters violated N.C. Gen. Stat. § 75-1.1.

We hold that these allegations do not demonstrate conduct which amounts to an inequitable assertion of Defendants' power or position over Plaintiffs, nor do these allegations demonstrate that Defendants' actions had the capacity or tendency to deceive.

Plaintiffs rely on *Shepard v. Bonita Vista Properties, L.P.*, 191 N.C. App. 614, 664 S.E.2d 388 (2008), *aff'd per curiam*, 363 N.C. 252, 675 S.E.2d 332 (2009), and *Sampson-Bladen Oil Co. v. Walters*, 86 N.C. App. 173, 356 S.E.2d 805, *disc. review denied*, 321 N.C. 121, 361 S.E.2d 597 (1987), to support their contention that "obviously the violation of numerous statutory, regulatory, and public policy considerations of this State, arising out of the over-service of alcohol . . . violates Chapter 75." We find these cases distinguishable from the case at bar and are not persuaded by Plaintiffs' strained comparisons.

In *Shepard*, defendant was the owner and operator of the campground at which plaintiffs lived in their recreational vehicles. Plaintiffs paid defendant monthly rent for the lots their vehicles occupied, plugged their vehicles into one of the campground's power sources, and paid defendant for electricity. After having lived at the campground for more than a year, Plaintiff Tamitha Shepard noticed that the campground's bath house was deteriorating and notified the local health department. Defendant became upset when she learned that the health department had been contacted, and told Shepard that defendant would " 'fix' her[.]" *Shepard*, 191 N.C. App. at 618, 664 S.E.2d at 392. Shortly thereafter, defendant's husband placed a zip-tie on the power box supplying power to plaintiff Debra Rosseter's vehicle, and defendant turned off Rosseter's electricity " 'at the main power box,' and placed a padlock on the 'pedestal.' " *Id.* When Rosseter " 'plugged into an old 30 amp power source[,]' " *id.*, near Rosseter's vehicle, defendant had Rosseter's power unplugged and the old power source destroyed. Defendant and one of her employees then " 'began flipping breakers at the [campground], resulting in the electric power being turned on and off ' " at each of plaintiffs' vehicles. *Id.* Plaintiffs' vehicles were damaged as a result of the electrical service interruptions, and plaintiffs moved out of the campground that day. This Court held that defendant's interfering with and disconnecting plaintiffs' utilities was, "at a minimum, unfair[,]" *id.* at

625, 664 S.E.2d at 395, and upheld the trial court's order trebling the damages awarded plaintiffs pursuant to N.C. Gen. Stat. § 75-16. *Id.*

In *Sampson-Bladen Oil Co.*, plaintiff created false invoices for oil which plaintiff never delivered to defendants and charged defendants for approximately 2,600 gallons more oil than plaintiff delivered to defendants over a two-year period. This Court held that "systematically overcharging a customer for two years, as the jury found was done here in the amount of $2,795.30, is an unfair trade practice squarely within the purview of [N.C. Gen. Stat. § 75-1.1.]" *Sampson-Bladen Oil Co.*, 86 N.C. App. at 177, 356 S.E.2d at 808.

Unlike in *Shepard* where defendant inequitably and injuriously asserted her power over plaintiffs by unilaterally denying plaintiffs electricity for which plaintiffs had paid and were entitled to, in retribution for Shepard's notifying the health department, in this case, Defendants asserted no power over Plaintiffs, inequitably or otherwise, and instead served Plaintiffs solely at Plaintiffs' repeated requests. Furthermore, unlike in *Sampson-Bladen Oil Co.* where plaintiff's fraudulent invoices plainly had the tendency to deceive defendants as to the amount of oil they had received and the amount of money they owed, Defendants' actions in this case neither intentionally nor inadvertently deceived Plaintiffs regarding any aspect of the sale or service of alcohol to the patrons.[2] Accordingly, contrary to Plaintiffs' contentions, neither *Shepard* nor *Sampson-Bladen Oil Co.* controls the outcome of the present case. Indeed, neither case remotely supports Plaintiffs' position.

Plaintiffs further argue that Defendants' actions violated Chapter 18B of the North Carolina General Statutes, which regulates the sale, purchase, transportation, manufacture, consumption, and possession of alcoholic beverages in North Carolina, and Title 4, Subchapter 2 of the North Carolina Administrative Code, promulgated under the statutory authority conferred by N.C. Gen. Stat. § 18B-207, thus constituting unfair or deceptive trade practices. Specifically, Plaintiffs advance the following arguments that Defendants' violation of provisions of Chapter 18B and Title 4 constitutes a violation of the UDTPA: N.C. Gen. Stat. § 18B-305 provides in pertinent part that "[i]t shall be unlawful for a permittee or his employee . . . to knowingly sell or give alcoholic beverages to any person who is intoxicated." N.C. Gen. Stat.

---

2. Notably, Plaintiffs do not contend that they did not get exactly what they ordered, nor is there any contention that the beer they were served was adulterated in any way.

§ 18B-305(a) (2007). Furthermore, "a permittee shall be responsible for the actions of all employees of the business for which the permit is issued[,]" N.C. Gen. Stat. § 18B-1003(b) (2007), and it is unlawful for a permittee or his employee to knowingly allow any violation of Chapter 18B to occur on his licensed premises. N.C. Gen. Stat. § 18B-1005 (2007). Pursuant to 4 N.C.A.C. § 2S.0206, "[n]o permittee or his employees shall allow an intoxicated person to consume alcoholic beverages on his licensed premises." 4 N.C.A.C. § 2S.0206 (2007). Additionally, 4 N.C.A.C. § 2S.0201 mandates that permittees comply with Chapter 18B of the North Carolina General Statutes.

The violation of a regulatory statute designed to protect the consuming public *may* constitute an unfair or deceptive practice, even where the statute itself does not provide for a private right of action. *Stanley v. Moore*, 339 N.C. 717, 723, 454 S.E.2d 225, 228 (1995). Some regulatory acts specifically designate that a violation of the provisions of the act is also a violation of N.C. Gen. Stat. § 75-1.1. *See, e.g.*, N.C. Gen. Stat. § 66-67.5(b) (2007) ("A seller or issuer of a gift card who violates this section commits an unfair trade practice under [N.C. Gen. Stat. §] 75-1.1 . . . ."); N.C. Gen. Stat. § 66-100(e) (2007) ("The violation of any provisions of this Article shall constitute an unfair practice under [N.C. Gen. Stat. §] 75-1.1."). However, neither Chapter 18B nor 4 N.C.A.C. § 2S specifically states that a violation of those provisions is also a violation of N.C. Gen. Stat. § 75-1.1.

Additionally, North Carolina appellate courts have held that violations of certain regulatory statutes are *per se* violations of N.C. Gen. Stat. § 75-1.1. *See, e.g.*, *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 71, 529 S.E.2d 676, 683, *reh'g denied,* 352 N.C. 599, 544 S.E.2d 771 (2000) (holding that conduct that violates N.C. Gen. Stat. § 58-63-15(11)(f) constitutes a violation of N.C. Gen. Stat. § 75-1.1 as a matter of law); *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 98-99, 331 S.E.2d 677, 681 (1985) (holding that a violation of N.C. Gen. Stat. §§ 95-47.6(2) or (9) constitutes a violation of N.C. Gen. Stat. § 75-1.1 as a matter of law). However, the courts have so concluded only where the regulatory statute *specifically* defines and proscribes conduct which is unfair or deceptive within the meaning of N.C. Gen. Stat. § 75-1.1.[3]

_____

3. N.C. Gen. Stat. § 58-63-15 provides:

The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

(1) Misrepresentations and False Advertising of Policy Contracts.—Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illus-

**NOBLE v. HOOTERS OF GREENVILLE (NC), LLC**

[199 N.C. App. 163 (2009)]

In this case, unlike the statutes at issue in *Gray* and *Winston Realty Co.*, the provisions cited by Plaintiffs do not specifically define and proscribe unfair or deceptive conduct within the meaning of N.C. Gen. Stat. § 75-1.1. Accordingly, we decline to hold that a violation of the provisions of Chapter 18B or 4 N.C.A.C. § 2S is a *per se* violation of the UDTPA.

Furthermore, the violation of a regulatory scheme may be a violation of the UDTPA where the regulatory violation satisfies the three elements of a UDTPA claim. *Drouillard v. Keister Williams Newspaper Services, Inc.*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992) ("If the violation of the Trade Secrets Protection Act satisfies [the] three prong test, it would be a violation of N.C. Gen. Stat. § 75-1.1."), *disc. review denied and cert. dismissed*, 333 N.C. 344, 427 S.E.2d 617 (1993). Here, however, Plaintiffs have failed to allege actions which constitute the first element of a claim under the UDTPA: "an unfair or deceptive act or practice, or an unfair method of competition[.]" *Furr*, 130 N.C. App. at 551, 503 S.E.2d at 408 (quotation marks and citation omitted). Thus, the alleged violation of the statutes and regulations cited by Plaintiffs does not constitute a violation of the UDTPA.

---

tration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statement as to the dividends or share or surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance.

N.C. Gen. Stat. § 58-63-15 (2007). Similarly, N.C. Gen. Stat. § 95-47.6 provides:

A private personnel service shall not engage in any of the following activities or conduct:

. . . .

(2) Publish or cause to be published any false or fraudulent information, representation, promise, notice or advertisement.

. . . .

(9) Knowingly make any false or misleading promise or representation or give any false or misleading information to any applicant or employer in regard to any employment, work or position, its nature, location, duration, compensation or the circumstances surrounding any employment, work or position including the availability thereof.

N.C. Gen. Stat. § 95-47.6 (2007).

Finally, Plaintiffs argue that Defendants' actions in selling and serving Plaintiffs beer and allowing Plaintiffs to leave the restaurant after consuming the beer were unfair within the meaning of the UDTPA because such actions "offend[] established public policy." We agree with Plaintiffs that it is the public policy of North Carolina to protect the public from injury occasioned by an intoxicated individual. We do not, however, agree with Plaintiffs that *Hutchens v. Hankins*, 63 N.C. App. 1, 303 S.E.2d 584, *disc. review denied*, 309 N.C. 191, 305 S.E.2d 734 (1983), the sole case upon which Plaintiffs rely, supports their argument that this public policy of our State creates a cause of action under the UDTPA for the conduct at issue in this case. On the contrary, the *Hutchens* Court specifically held that N.C. Gen. Stat. § 18A-34, now N.C. Gen. Stat. § 18B-305,[4] permitted "persons injured by an intoxicated tavern customer the right to recover from the tavern that provided liquor to the customer upon proof of the tavern owner's *negligence*." *Id.* at 12, 303 S.E.2d at 591 (emphasis added).

Here, Plaintiffs have asserted negligence claims against Defendants, and Defendants' answers include defenses based on contributory negligence. Although those claims are not before us on this appeal, we acknowledge that, in the face of such tragic injuries, Plaintiffs' attempt to pursue a UDTPA claim, to which contributory negligence is not a defense, is understandable. *See Winston Realty Co.*, 314 N.C. at 96, 331 S.E.2d at 681 (holding that contributory negligence is not a defense to an unfair and deceptive trade practices claim). Nonetheless, for the foregoing reasons, Plaintiffs' complaint fails to establish a *prima facie* case under the UDTPA. Plaintiffs' opportunity and capacity to recover for their injuries exists, if at all, in their ability to recover for violations of Chapter 18B based on their negligence theories.

For the reasons stated above, Plaintiffs have failed to allege facts which, if proven, would constitute an unfair or deceptive act under the UDTPA and, thus, have failed to allege a "violation" of the provisions of Chapter 75, as required by N.C. Gen. Stat. § 75-16. Because we hold that Plaintiffs' complaint failed to establish a *prima facie* claim for unfair or deceptive trade practices under the UDTPA, Plaintiffs lacked standing to bring a UDTPA claim. Accordingly, the trial court did not err in dismissing Plaintiffs' UDTPA claim.

---

4. Session Laws 1981, c. 412, repealed Chapter 18A, effective January 1, 1982, and enacted Chapter 18B in lieu thereof.

Based on this holding, we need not address Plaintiffs' additional arguments. The order of the trial court is .

AFFIRMED.

Judges JACKSON and STROUD concur.