NO. COA14-225

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

JOHN C. PRELAZ and DEBORAH A.
PRELAZ,

    Plaintiffs,

    v.                          Haywood County
                                   No. 11 CVS 587

TOWN OF CANTON, a North Carolina
Municipal Corporation,

    Defendant.

Appeal by plaintiffs and cross-appeal by defendant from judgment entered 16 May 2013 by Judge W. David Lee in Haywood County Superior Court. Heard in the Court of Appeals 3 June 2014.

      *Roberts & Stevens, P.A., by Mark C. Kurdys and Ann-Patton Hornthal for plaintiffs-appellants.*

      *McGuire Wood & Bissette, P.A., by Sabrina Presnell Rockoff, and Frank G. Queen and Burton C. Smith, Jr. for defendant cross-appellant and defendant-appellee.*

    ELMORE, Judge.

    John C. Prelaz and Deborah A. Prelaz ("plaintiffs") commenced this action against the Town of Canton ("the Town") in Haywood County Superior Court. Plaintiffs prayed the trial court for a declaration of title recognizing them as the

rightful title holders of certain real property and to enter an order for the recovery of rents. This real property consists of approximately 110 acres and is known as Camp Hope ("the Camp Hope property" or "the property."). A trial began in the matter on 6 May 2013. At trial, plaintiffs argued that title to the property reverted to them when the Town violated an express condition of a governing deed. The Town argued that the language in the deed upon which plaintiffs relied was precatory. The trial court, finding that the language was not precatory, submitted to the jury the question of whether the Town violated an express condition by allowing a third party to operate a summer camp on the Camp Hope property primarily for the benefit of residents of areas and states other than Canton, Haywood, and adjoining counties. Unanimously ruling in the Town's favor, the jury answered "no." On 16 May 2013, the trial court entered an order declaring that the Town retained fee simple determinable title to the Camp Hope property. Plaintiffs now appeal, *inter alia*, the trial court's denial of their (1) motion for a directed verdict, (2) motion for judgment notwithstanding the verdict, and (3) motion for a new trial. In its cross-appeal, the Town appeals the trial court's denial of its motion for a directed verdict. After careful consideration, we conclude that

the trial court erred when it denied the Town's motion for a directed verdict. Accordingly, we reverse the trial court's 16 May 2013 order and remand this matter to the trial court for entry of a judgment in favor of defendant on directed verdict.

## I. Background

The relevant facts of this case are largely undisputed and are as follows: By deed dated 4 May 1992 ("the Deed"), Champion International Corporation ("Champion" or "grantor"), as party of the first part, conveyed title to the Camp Hope property to Donald W. Randolph, Carl M. Gillis, and R. Cecil Roberts, Trustees of the Robertson Memorial Young Men's Christian Association ("YMCA"), as party of the second part, and to the Town, a municipal corporation, as party of the third part. The Deed is recorded in Book 426 at Page 771 in the Office of Register of Deeds in Haywood County.

Specifically, the Deed conveyed to the YMCA a fee simple determinable estate in the property so long as the property was used in accordance with certain enumerated express terms and conditions set forth in the Deed. The Deed conveyed to the Town a reversionary interest in the Camp Hope property which would, by operation of law and without re-entry or suit, cause title of the property to revert to the Town should the YMCA violate any

of the express terms and conditions. Should the Town take title to the property, the Deed also required that the Town abide by certain enumerated express terms and conditions or risk forfeiting title. If the Town violated the express conditions contained in the Deed, Champion provided that title to the Camp Hope property would, by operation of law and without re-entry or suit, revert to Champion, or its successor corporation, as party of the first part. The YMCA subsequently forfeited its title to the Camp Hope property, and the Town took title to it on 25 July 1996. The Town has held title to the property as party in the third part since that time.

In March 2006, plaintiffs purchased a tract of land adjacent to the Camp Hope property. Soon thereafter, in April 2006, International Paper Company, successor by merger to Champion, assigned and conveyed its reversionary interest in the Camp Hope property to plaintiffs by assignment and Quitclaim Deed recorded in Book 667 at Page 179 in the Haywood County Register of Deeds. Plaintiffs have held a reversionary interest in the property as party in the first part since that time.

In April 2005, the Town negotiated a five-year lease agreement with Wellspring Adventure Camp, LLC ("Wellspring") for the operation of a weight loss and fitness summer camp to be

located on the Camp Hope property. Wellspring is a for-profit limited liability company that operates weight loss camps throughout the United States and Europe. On 11 April 2006, the Canton Board of Aldermen approved a two-year extension of the lease agreement. Pursuant to the lease terms, Wellspring has primary use and control of the property from 15 May through 15 September each year for the duration of the lease term. Wellspring is responsible for maintaining the property and paying a $700.00 monthly rental fee to the Town. In addition, the lease requires that Wellspring not violate any of the enumerated conditions set forth in the Deed. Evidence at trial tended to show that Wellspring campers reside throughout the United States and may select the camp location of their choosing. Approximately 978 campers participated in the Wellspring summer camp at the Camp Hope property during the summers of 2005-2011. Of these, only 20 or so campers resided permanently in Haywood or adjoining counties.

A clause in the Deed provides: "the Town will not operate on the property a summer camp primarily for the benefit of residents of other areas and states." Because so few campers resided permanently in the local community, plaintiffs filed suit against the Town based on an alleged violation of this

clause, which plaintiffs argued was an express condition. At trial, the Town took the position that the clause was merely precatory. Alternatively, the Town argued that it did not violate this express condition (assuming it was one) because the operation of the Wellspring camp *did*, in fact, primarily benefit local residents, not residents from other areas and states. The Town presented the following evidence in support of its position: (1) the Town has received over $450,000 in capital improvements to the Camp Hope property as a result of its lease with Wellspring; (2) the local economy has been boosted because Wellspring contracts with local exterminators, electricians, plumbers, and external vendors to maintain the grounds; (3) Wellspring operates family workshops that bring $200,000 annually to local businesses; (4) Wellspring recommends Canton and Haywood County hotels and restaurants to the campers' families; and (5) the Wellspring lease allows local residents to use the Camp Hope property from 15 September to 15 May each year.

To reflect the jury's determination that the Town did not violate the condition requiring that it not allow a summer camp that primarily benefited residents from other areas and states to operate on the Camp Hope property, the trial court entered an

order declaring that the Town retained fee simple determinable title to the property. Both parties now appeal.

## II. **Analysis**

The Town raises one issue on cross-appeal—that the trial court erred in denying its motion for a directed verdict because the clause relied upon by plaintiffs in the Deed is precatory as a matter of law. We agree with the Town on this issue. Therefore, we need not address plaintiffs' issues on appeal.

Initially we note that, although the jury ruled in favor of the Town, that favorable outcome does not prohibit the Town from raising this issue on appeal. *See Finkel v. Finkel*, 162 N.C. App. 344, 349, 590 S.E.2d 472, 475 (2004) (holding that generally "the party who prevails at trial may appeal where the judgment is less favorable than that party thinks is just"). "The standard of review of directed verdict is whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322-23, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Int'l Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)).

The Deed specifically grants:

> To the party of the third part a fee simple determinable estate in the lands hereinafter

described (known as the Camp Hope property) which fee simple determinable estate shall automatically arise at such time as the parties of the second part, [the YMCA], shall violate any of the conditions imposed upon the parties of the second part as hereinafter enumerated. The fee simple determinable estate hereby granted to the party of the third part, once it has come into being, shall last so long as the said lands (and buildings that may be erected thereon) are used by the Town of Canton in accordance with the express conditions hereinafter **enumerated**, and no longer. [Emphasis added].

The Deed also describes the Town's interest as follows:

Once its estate has arisen by operation of law . . . The Town of Canton, shall have and hold the above described land and premises [the Camp Hope property], together with all the privileges and appurtenances thereunto belonging, or in anywise thereunto appertaining, so long as the lands are used for the purposes hereinafter set out and in accordance with the conditions hereinafter set out and no longer, and **when the party of the third part ceases to use said property for said purposes or when the party of the third part shall violate any of the conditions placed upon the party of the third part; the title to said lands and premises shall, without re-entry or suit, automatically revert to the party of the first part**, Champion International Corporation, or its successor corporation. [Emphasis added].

The Town of Canton will hold title to the Camp Hope property hereinafter described and will use the same for the benefit of the same persons and groups of persons who have

historically used the facilities of the YMCA in the Town of Canton and the Camp Hope property. This shall include citizens of the Town of Canton and citizens of Haywood County and adjoining counties but should not preclude the use of the property by persons from other areas, **but the Town will not operate on the property a summer camp primarily for the benefit of residents of other areas and states**. The Town will use its **best efforts** to see that the users of the facilities are those who have historically used the same. [Emphasis added].

As to the express conditions imposed on the YMCA, the Deed sets forth fourteen numbered paragraphs preceded by the sentence: "The conditions hereby placed upon the party of the second part . . . are as follows[.]" As to the conditions imposed on the Town, the Deed sets forth seventeen numbered paragraphs preceded by the sentence: "The conditions hereby placed upon the party of the third part, The Town of Canton, are as follows[.]" The express conditions placed on the Town include:

1. The property will be used for active recreational purposes.

2. The Town of Canton will keep the property free of trash and debris, clearing underbrush and will keep grassed areas mowed and in good condition.

3. The Town of Canton will maintain all

structures existing at the time of this conveyance in good condition, ordinary wear and tear excepted. It will keep up the walls, roof, interior and exterior of the dining hall and all residence buildings and all water and sewer lines and septic facilities. If any structures must be removed because of age and ordinary wear and tear they will be cleared away and not allowed to remain in place.

4. The Town of Canton will use the property for active recreational purposes such as camping for scout troops, organized camping programs for other organizations, picnicking, social and political gatherings, games such as shuffleboard, baseball, softball, tennis, football, hiking, etc. but will not permit the land to be used solely in a passive manner such as reverting to its nature state with the sole recreational use being hiking.

5. No general timbering operations will be allowed other than the cutting of diseased or dead timber and the ordinary thinning of new growth.

6. All camp fires will be carefully contained and built only in designated areas, such as on concrete pads or outdoor grills.

7. No firearms will be allowed within the area and no hunting or trapping of any kind will be allowed except the hunting or trapping of dangerous animals or snakes by proper governmental agencies.

8. The Town of Canton may build further recreational building, cabins, gyms, etc., but must maintain any such buildings so built.

9.   The Town of Canton will permit no illegal activity to take place on the property.

10.   The Town of Canton will permit no garbage or waste disposal on the property and will permit no hazardous substances to be brought on to the property or stored thereon.

11.   The Town of Canton will carry liability insurance on the property in amounts it deems appropriate.

12.   No permanent or semi-permanent hookups for mobile homes or recreational vehicles will be allowed on the property.  Any such hookups in existence at the time that the Town of Canton's estate in the property arises will be removed from the property at the sole cost and expense of the Town of Canton.  No mobile homes will be allowed on the property and recreational vehicles will be allowed only when such vehicles have their own source of power, water and sewer and then only for two weeks (or a lesser period).   Recreational vehicles will be allowed on the property only in conjunction with other types of camping such as when a scout troop uses the area, the scout masters may bring a self-contained recreational vehicles on the property.

13.   In the operation of the Camp Hope facilities by the Town of Canton, it may charges fees sufficient to enable the Town of Canton to recover the ordinary costs of the maintenance and operation of the Camp Hope facilities but will not charge fees in excess of those fees which would ordinarily recoup the expense of the maintenance and operating costs of the facilities.  The Town of Canton will not operate Camp Hope as a profit making venture.

14. No building located on the property at such time as the Town of Canton's Estate may arise or no building erected thereafter will be occupied by any person or group of persons as a permanent residence except that one structure may be occupied by a caretaker of the property and his immediate family.

15. The Town of Canton will actively maintain the property at all times and will actively operate a program on the property (at least in warmer months) at all times.

16. Should The Town of Canton violate one or more of conditions number 1 through 14 and such violation is not remedied and continues for a period of 90 days after Champion International Corporation has given to the Town of Canton written notice of the violation, the continued violation of any one of conditions 1 through 14 for 90 days after such written notice will cause an automatic reverter of the title from Town of Canton to the party of the first part, Champion International Corporation.

17. Should the Town of Canton fail to actively maintain the property or actively operate a program on the property as such obligation is placed on the Town by condition number 15, and such failure to maintain or actively operate a program on the property shall continue for a period of one (1) year, the title to the property will also automatically revert from the Town of Canton to the party of the first part, Champion International Corporation.

On appeal, plaintiffs do not allege that the Town violated any of these seventeen conditions. Instead, it is plaintiffs'

position that the clause in the Deed, "but the Town will not operate on the property a summer camp primarily for the benefit of residents of other areas and states[,]" constitutes an express condition, which, if violated, triggers plaintiffs' reversionary interest. Further, given that the Town (allegedly) violated this condition, plaintiffs contend that the trial court erred in denying their motion for a directed verdict and their motion for judgment notwithstanding the verdict. Alternatively, it is the Town's position that the clause is precatory and, therefore, merely advisory. Thus, any violation could not by operation of law trigger plaintiffs' reversionary interest. Again, we agree with the Town.

"In construing a conveyance executed after January 1, 1968, in which there are inconsistent clauses, the courts shall determine the effect of the instrument on the basis of the intent of the parties as it appears from all of the provisions of the instrument." N.C. Gen. Stat. § 39-1.1 (2013). "[T]he meaning of [a deed's] terms is a question of law, not of fact." *Elliott v. Cox*, 100 N.C. App. 536, 538, 397 S.E.2d 319, 320 (1990). Even "[a]mbiguous deeds traditionally have been construed by the courts according to rules of construction, rather than by having juries determine factual questions of intent." *Robinson v.*

*King*, 68 N.C. App. 86, 89, 314 S.E.2d 768, 771 (1984). Therefore, the question of whether the language contained in a Deed is precatory is to be decided by the Courts as a matter of law.

"A grantor can impose conditions and can make the title conveyed dependent upon [a grantee's] performance. But if [the grantor] does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words cannot be controlled by the language indicating the grantor's motive." *Ange v. Ange*, 235 N.C. 506, 508, 71 S.E.2d 19, 20-21 (1952) (internal quotations and citations omitted). It is well established that "[t]he law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is *clearly manifested*." *Washington City Board of Education v. Edgerton*, 244 N.C. 576, 578, 94 S.E.2d 661, 664, (1956) (emphasis added). For a reversionary interest to be recognized, the deed must "contain express and unambiguous language of reversion or termination upon condition broken." *Station Associates, Inc. v. Dare Cnty.*, 350 N.C. 367, 370, 513 S.E.2d 789, 792 (1999). "[A] mere expression of the purpose for which the property is to be

used without provision for forfeiture or re[-]entry is insufficient to create an estate on condition[.]" *Id*. at 373, 513 S.E.2d 793.

Applying this law to the Deed in the present case, we note that the document does, in fact, contain language of reversion or termination. However, the reversionary language is in reference to the seventeen enumerated conditions, not the clause on which plaintiffs rely. The Deed provides, should the Town cease "to use said property for said purposes" or "violate any of the conditions placed upon [the Town]," title to the property "shall, without re-entry or suit, automatically revert to . . . Champion . . . or its successor corporation." At the outset of the Deed, the grantor specified that both the YMCA and the Town could maintain title only if each used the property in accordance with the "express conditions hereinafter **enumerated** and no longer." "Enumerate" means "to count off or designate one by one; to list." BLACK'S LAW DICTIONARY 574 (8th ed. 1999). As cited above, the Deed enumerates seventeen conditions placed upon the Town, none of which reference the clause at issue. Taken as a whole, it is apparent that the grantor intended to trigger reverter only if one of the enumerated conditions was broken. Further, condition #4 serves as a restraint on use,

providing that the Town must use the property for recreational purposes. Arguably, if the grantor intended to further restrain the Town's use of the property by prohibiting it from operating a summer camp that primarily benefited residents of other states, it would have done so in an enumerated paragraph.

However, the paragraph in which the clause is written is un-numbered and devoid of any express and unambiguous language of reversion upon condition broken. In fact, in their brief, plaintiffs do not direct us to any reversionary language in direct reference to this clause. Thus, nowhere in the paragraph or in the Deed itself is it "clearly manifested" that title to the property is to revert to Champion, or its successor, upon the Town's violation of the clause. *See Edgerton, supra.* Moreover, the clause is followed by a sentence in which the grantor asks that the Town use its "best efforts" to ensure "that the users of the facilities are those who have historically used the same." The inclusion of such subjective language in this paragraph is additional evidence that the grantor did not envision this paragraph or the clause therein to inflict a rigid restriction upon the title or to create a condition subsequent. Instead, we hold that this clause is precatory. Champion merely sought to express an intended

purpose for which the property was (hopefully) not to be used. *See Ange*, 235 N.C. at 509, 71 S.E.2d at 21 (holding that a conveyance of land containing the clause "for church purposes only," did not create a condition subsequent because, without reservation of power of termination or right of re-entry for condition broken, the clause merely expressed the motive and purpose which prompted the conveyance); *see also Nelson v. Bennett*, 204 N.C. App. 467, 472, 694 S.E.2d 771, 775 (2010) (concluding that the portion of a will providing that "[t]he house is not to be used for a business or Bed and Breakfast and is not to be leased out by [Ms.] Frejlach" was precatory because it was unaccompanied by express and unambiguous language of reversion or termination upon condition broken).

## III. <u>Conclusion</u>

In sum, the trial court erred in denying the Town's motion for a directed verdict at the close of plaintiffs' evidence and again at the close of all evidence. As a matter of law, the language relied upon by plaintiffs is precatory and could not trigger plaintiffs' reversionary interest in the Camp Hope property. We remand this matter to the trial court for entry of a judgment in favor of defendant on directed verdict.

Reversed and remanded.

Judges McGEE and McCullough concur.