IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA16-373

Filed: 15 November 2016

Beaufort County, No. 14 CVS 697

TOWN OF BELHAVEN, NC; and THE NORTH CAROLINA NAACP STATE CONFERENCE OF BRANCHES, THE HYDE COUNTY NAACP BRANCH, and THE BEAUFORT COUNTY NAACP BRANCH, Plaintiffs,[1]

v.

PANTEGO CREEK, LLC; and VIDANT HEALTH, INC., Defendants.

Appeal by Plaintiffs from order entered 13 October 2015 by Judge R. Stuart Albright in Beaufort County Superior Court. Heard in the Court of Appeals 19 October 2016.

*Alan McSurely for plaintiffs-appellants the North Carolina NAACP State Conference of Branches, the Hyde County NAACP Branch, and the Beaufort County NAACP Branch.*

*C. Scott Holmes for plaintiff-appellants Town of Belhaven, NC and Pungo District Hospital Community Board, Inc.*

*K&L Gates LLP, by Gary S. Qualls, Kathryn F. Taylor, Susan K. Hackney, and Steven G. Pine, for defendant-appellee University Health Systems of Eastern Carolina, Inc. d/b/a Vidant Health, Inc.*

*Sumrell, Sugg, Carmichael, Hicks and Hart, P.A., by Scott C. Hart, Arey W. Grady, and Frederick H. Bailey, III, for defendant-appellee Pantego Creek, LLC.*

ENOCHS, Judge.

---

[1] Although not included in the caption of the trial court's order, Pungo District Hospital Community Board, Inc. is also a plaintiff in this case.

The Town of Belhaven, North Carolina, the Pungo District Hospital Community Board, Inc., the NAACP State Conference of Branches, the Hyde County NAACP Branch, and the Beaufort County NAACP Branch (collectively "Plaintiffs") appeal from the trial court's order granting Pantego Creek, LLC's and Vidant Health, Inc.'s (collectively "Defendants") motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. After careful review, we affirm the trial court's order.

Factual Background

On 21 January 1948, the Town of Belhaven ("Belhaven"), located in Beaufort County, North Carolina, recorded a deed granting the Pungo District Hospital Corporation ("PDHC") a 100 foot strip of land ("the 1948 Deed"). The deed provided, in pertinent part, as follows:

> THIS DEED, MADE this the 20th day of January, 1948, by Town of Belhaven, a municipal corporation of the State of North Carolina, hereinafter designated as party of the first part, to Pungo District Hospital Corporation, hereinafter designated as party of the second part,
>
> WITNESSETH: That the party of the first part, in consideration of the benefits to be derived by the citizens of the Town of Belhaven from the construction and operation of a hospital on the property hereinafter described and pursuant to the authority granted by Chapter 659 of the Session Laws of 1947, has given, granted, bargained, sold and does hereby convey unto the party of the second part that certain lot or parcel of land in the Town of Belhaven, Beaufort County, North Carolina, particularly described as follows:

> That portion of Allen Street in said Town of Belhaven 100 feet in width extending from Front or [sic] Water Street Southwardly to Pantego Creek, reference being made to the map made by Norfolk Southern Railroad Company for a more accurate description thereof.
>
> TO HAVE AND TO HOLD the said piece or parcel of land, together with all and singular, the rights, ways, privileges and appurtenances thereto belonging or in anywise appertaining unto the party of the second part, its successors and assigns in fee simple, in as full and ample manner as the party of the first part is authorized and empowered to convey the same.

After recordation, PDHC constructed Pungo District Hospital ("the Hospital") on the land conveyed in the 1948 Deed. PDHC then managed and operated the Hospital until 2011.

In 2011, PDHC entered into an agreement ("the 2011 Agreement") with University Health Systems of Eastern Carolina, Inc., d/b/a Vidant Health, Inc. ("Vidant") and Pantego Creek, LLC ("Pantego Creek") — which was formed on 28 September 2011 by PDHC — transferring full control of PDHC to Vidant. Pursuant to the 2011 Agreement, Pantego Creek was vested with the right to prosecute any breach of the 2011 Agreement by Vidant. The 2011 Agreement also expressly stated that "The Parties agree that this Agreement and all of the Transaction Agreements are not intended to be third party beneficiary agreements."

In September 2013, Vidant announced that it intended to close the Hospital. In response, Belhaven and the NAACP State Conference of Branches, the Hyde

County NAACP Branch, and the Beaufort County NAACP Branch (collectively "the NAACP"), publicly denounced closure of the Hospital. Thereafter, the Mayor of Belhaven, the NAACP, and Vidant met on several occasions to discuss concerns surrounding the Hospital's imminent closure.

As a result of these meetings, the NAACP, Belhaven, and Vidant entered into a written agreement ("the Mediation Agreement") charging Belhaven with creating the Pungo District Hospital Community Board, Inc. ("Community Board"). The Mediation Agreement also stated the following: "In the event that the [Community Board] is unable to assume operational responsibility for the hospital for whatever reason on July 1, 2014, the Hospital will be closed[.]"

Belhaven failed to comply with the Mediation Agreement's terms when the Community Board failed to meet the 1 July 2014 deadline. As a result, Vidant closed the Hospital on 1 July 2014 and deeded the associated real property to Pantego Creek (the "2014 Deed").

Plaintiffs filed a complaint and motion for a temporary restraining order on 13 August 2014 in Beaufort County Superior Court. The following day, the Honorable Milton F. Fitch granted Plaintiffs' motion for a temporary restraining order. The case was thereafter removed to the United States District Court for the Eastern District of North Carolina. On 18 March 2015, the Honorable James C. Dever, III remanded the case to Beaufort County Superior Court on the ground that Plaintiffs had not

actually brought a federal civil rights claim under Title VI of the Federal Civil Rights Act of 1964, but rather had alleged civil rights violations under N.C. Gen. Stat. § 99D-1 (2015).

On 6 April 2015, Plaintiffs filed their first amended complaint in Beaufort County Superior Court. The complaint set forth the following six causes of action: (1) breach of contract against Vidant as successor in interest to the 1948 Deed by Belhaven; (2) declaratory judgment against Defendants for breaching the 1948 Deed's terms by Belhaven; (3) fraud against Vidant; (4) unfair and deceptive trade practices against Vidant by Belhaven and the Community Board; (5) breach of fiduciary duty against Pantego Creek by Belhaven; and (6) Section 99D-1 claim against Defendants by the NAACP.

On 30 April 2015, Senior Resident Superior Court Judge Wayland J. Sermons, Jr. sent a formal letter to Chief Justice Mark Martin of the North Carolina Supreme Court, copied to counsel for all parties, recommending that the case be designated as exceptional and that Chief Justice Martin assign a judge to the case in his absolute discretion. On 7 May 2015, Chief Justice Martin entered an order designating the case as exceptional pursuant to Rule 2.1 of the General Rules of Practice for the Superior and District Courts and appointing the Honorable R. Stuart Albright to adjudicate the matter.

On 10 July 2015, Defendants filed a motion to dismiss Plaintiffs' first amended complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief could be granted. Defendants attached the following documents to their motion: (1) the 2011 Agreement and related documentation thereto; (2) the Mediation Agreement; (3) an email from the president and CEO of Vidant to the Mayor of Belhaven incorporated by reference in Plaintiffs' complaint; and (4) the 1948 Deed.[2]

A hearing on Defendants' motion was held before Judge Albright on 6 October 2015 in Beaufort County Superior Court. On 13 October 2015, Judge Albright entered an order granting Defendants' motion to dismiss. Plaintiffs entered notice of appeal on 10 November 2015.

Analysis

I.    Motion to Dismiss

On appeal, Plaintiffs contend that the trial court erred in granting Defendants' motion to dismiss. Specifically, they assert that they pled sufficient factual allegations to advance each of their claims. We disagree.

> "The standard of review of an order granting a 12(b)(6) motion is whether the complaint states a claim for which relief can be granted under some legal theory when the complaint is liberally construed and all the allegations included therein are taken as true. On a motion to dismiss,

---

[2] Plaintiffs briefly argue that the trial court erred by considering these documents without converting Defendants' motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure. However, it is well settled that "[d]ocuments attached as exhibits to the complaint and incorporated therein by reference are properly considered when ruling on a 12(b)(6) motion." *Woolard v. Davenport*, 166 N.C. App. 129, 133-34, 601 S.E.2d 319, 322 (2004).

> the complaint's material factual allegations are taken as true. Dismissal is proper when one of the following three conditions is satisfied: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim. On appeal of a 12(b)(6) motion to dismiss, this Court conducts a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct."

*Podrebarac v. Horack, Talley, Pharr, & Lowndes, P.A.*, 231 N.C. App. 70, 74, 752 S.E.2d 661, 663-64 (2013) (quoting *Burgin v. Owen*, 181 N.C. App. 511, 512, 640 S.E.2d 427, 428-29 (2007)). We address each of Plaintiffs' claims in turn.

A.     Breach of Contract and Declaratory Judgment

Plaintiffs argue that because Defendants were successors in interest to the 1948 Deed they were subject to language included therein which amounted to a reversionary interest held by Belhaven that the granted property be used for the operation of a hospital for the benefit of the citizens of the town. They maintain that the trial court erred in dismissing Belhaven's breach of contract claim against Vidant and by failing to enter declaratory judgment against Vidant and Pantego Creek.

Plaintiffs assert that Article V, Section 3 of the North Carolina Constitution mandates that taxes shall only be levied for public purposes and contend that the subject land conveyed in the 1948 Deed can therefore never be used for anything other than for the operation of a hospital because it was conveyed by the Town of Belhaven

— a governmental entity — to PDHC. Consequently, they argue that the closure of the Hospital would extinguish the land's use for a public purpose and, in turn, run afoul of Article V, Section 3.

The fundamental flaw with Plaintiffs' position is that Belhaven did not include any language creating a reversionary interest in the 1948 Deed to the effect that the land would revert to Belhaven in the event that the land ceased being used for the operation of a hospital. Instead, the language in the 1948 Deed clearly states that the land was conveyed in fee simple absolute to PDHC.

Significantly, our Supreme Court has long held that

> [t]his Court has declined to recognize reversionary interests in deeds that do not contain express and unambiguous language of reversion or termination upon condition broken.
>
> We have stated repeatedly that a mere expression of the purpose for which the property is to be used without provision for forfeiture or reentry is insufficient to create an estate on condition and that, in such a case, an unqualified fee will pass.

*Station Assocs. v. Dare Cnty.*, 350 N.C. 367, 370-71, 513 S.E.2d 789, 792-93 (1999) (internal citations omitted).

Here, we are satisfied that the language of the 1948 Deed does nothing more than express the purpose for which Belhaven wished the subject property to be used. There does not exist any express and unambiguous reversionary interest in the deed, and indeed, to the contrary, it plainly states that PDHC is entitled "TO HAVE AND

TO HOLD the said piece or parcel of land, together with all and singular, the rights, ways, privileges and appurtenances thereto belonging or in anywise appertaining unto the party of the second part, its successors and assigns *in fee simple*, in as full and ample manner as the party of the first part is authorized and empowered to convey the same." (Emphasis added).

It is well settled that

> [a] grantor can impose conditions and can make the title conveyed dependent upon a grantee's performance. But if the grantor does not make any condition, but simply expresses the motive which induces him to execute the deed, the legal effect of the granting words cannot be controlled by the language indicating the grantor's motive. It is well established that the law does not favor a construction of the language in a deed which will constitute a condition subsequent unless the intention of the parties to create such a restriction upon the title is *clearly manifested*. For a reversionary interest to be recognized, the deed must contain express and unambiguous language of reversion or termination upon condition broken. A mere expression of the purpose for which the property is to be used without provision for forfeiture or re-entry is insufficient to create an estate on condition.

*Prelaz v. Town of Canton*, 235 N.C. App. 147, 155, 760 S.E.2d 389, 394 (2014) (internal citations, quotation marks, and brackets omitted).

Plaintiffs cite no authority for their proposition that an implicit reversionary interest is created simply because the granting party is a governmental entity which had a public purpose in mind at the time it conveyed certain property, nor are we aware of any. Consequently, we are bound by *Station Assocs., Inc.* and analogous

cases requiring that for a reversionary interest to exist it must be expressly and unambiguously stated in a grant of real property. We therefore hold that no reversionary interest was created in the 1948 Deed and PDHC and its successors in interest acquired title to the subject property in fee simple absolute.

Furthermore, although unnecessary to our determination of this issue, we also note that the General Assembly has affirmatively provided that

> [i]t is the purpose of the General Assembly of the State of North Carolina to provide that if a person claims title to real property under a chain of record title for 30 years, and no other person has filed a notice of any claim of interest in the real property during the 30-year period, then all conflicting claims based upon any title transaction prior to the 30-year period shall be extinguished.

N.C. Gen. Stat. § 47B-1 (2015). Towards this end, the General Assembly has emphasized that "obsolete restrictions . . . which have been placed on the real property records at remote times in the past often constitute unreasonable restraints on the alienation and marketability of real property." N.C. Gen. Stat. § 47B-1(2). Consequently,

> (a) Any person having the legal capacity to own real property in this State, who, alone or together with his predecessors in title, shall have been vested with any estate in real property of record for 30 years or more, shall have a marketable record title to such estate in real property.
>
> (b) A person has an estate in real property of record for 30 years or more when the public records disclose a title transaction affecting the title to the real property which

has been of record for not less than 30 years purporting to create such estate either in:

> (1) The person claiming such estate; or
>
> (2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate;

with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed.

> (c) Subject to the matters stated in G.S. 47B-3, such marketable record title shall be free and clear of all rights, estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to such 30-year period. All such rights, estates, interests, claims or charges, however denominated, whether such rights, estates, interests, claims or charges are or appear to be held or asserted by a person sui juris or under a disability, whether such person is natural or corporate, or is private or *governmental*, are hereby declared to be null and void.

N.C. Gen. Stat. § 47B-2(a)-(c) (2015) (emphasis added).

Because the 1948 Deed on its face states that it is fee simple, and since it had been held as such for over 60 years at the time of the events giving rise to the present appeal, we hold that the trial court did not err in dismissing Belhaven's breach of contract and declaratory judgment claims on this ground as well. Any argument that Defendants somehow violated the North Carolina Constitution when title was transferred to Vidant and then to Pantego Creek is foreclosed by the fact that they acquired fee simple absolute title from their predecessor in interest, PDHC, who also

enjoyed title in fee simple as a result of the 1948 Deed's express provisions as discussed above *and* the fact that they had held it for well over the 30 year time period delineated in N.C. Gen. Stat. §§ 47B-1 and 47B-2. Consequently, Plaintiffs' arguments on this issue are overruled.

B.    Fraud

Plaintiffs next contend that the trial court erred in dismissing their claim against Vidant for fraud. We disagree.

> The well-recognized elements of fraud are 1) a false representation or concealment of a material fact, 2) reasonably calculated to deceive, 3) made with intent to deceive, 4) which does in fact deceive, and which 5) results in damage to the injured party. A complaint charging fraud must allege these elements with particularity. In pleading actual fraud, the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations. Dismissal of a claim for failure to plead with particularity is proper where there are no facts whatsoever setting forth the time, place, or specific individuals who purportedly made the misrepresentations.

*Bob Timberlake Collection, Inc. v. Edwards*, 176 N.C. App. 33, 39, 626 S.E.2d 315, 321 (2006) (internal citations, quotation marks, and brackets omitted).

Significantly, the Mediation Agreement expressly stated that "In the event that the [Community Board] is unable to assume operational responsibility for the hospital for whatever reason on July 1, 2014, the Hospital will be closed[.]" Belhaven breached the Mediation Agreement when the Community Board was unable to legally

assume control of the Hospital on 1 July 2014 and Plaintiffs do not contend otherwise. Therefore, in complete accord with the agreement, Vidant closed the Hospital as it was entitled to. The NAACP and Belhaven fully acquiesced to this portion of the agreement to which they are signatories. "In North Carolina, parties to a contract have an affirmative duty to read and understand a written contract before they sign it." *Westmoreland v. High Point Healthcare Inc.*, 218 N.C. App. 76, 83, 721 S.E.2d 712, 718 (2012); *see Raper v. Oliver House, LLC*, 180 N.C. App. 414, 421, 637 S.E.2d 551, 555 (2006) (" 'Persons entering contracts . . . have a duty to read them and ordinarily are charged with knowledge of their contents.' " (quoting *Nationwide Mut. Ins. Co. v. Edwards*, 67 N.C. App. 1, 8, 312 S.E.2d 656, 661 (1984))).

Plaintiffs' agreement that Vidant could close the Hospital on 1 July 2014 was plain, clear, and unambiguous. Their attempt to allege fraud in their complaint does not address the import of this provision, but rather simply states that "[a]t the time Vidant made these representations, it was secretly implementing its plans to permanently close the [Hospital], convey the property to a small group of people who controlled the Pantego Creek, LLC, pay its agents to demolish the [Hospital], and to build clinics nearby to compete with the re-opened hospital."

Such a broad unparticularized allegation, despite ignoring the provision of the Mediation Agreement that "[i]n the event that the [Community Board] is unable to assume operational responsibility for the hospital for whatever reason on July 1,

2014, the Hospital will be closed" additionally violates the pleading requirements of Rule 9(b) of the North Carolina Rules of Civil Procedure which requires that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981) ("[I]n pleading actual fraud the particularity requirement is met by alleging time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations.").

Moreover, Plaintiffs are incapable of suffering damages based on the 2011 Agreement or the 2014 Deed between Vidant, PDHC, and Pantego Creek because they were not parties to those agreements and were not third-party beneficiaries thereof.

> North Carolina recognizes the right of a third-party beneficiary . . . to sue for breach of a contract executed for his benefit. In order to assert rights as a third-party beneficiary under [a contract], plaintiffs must show they were an intended beneficiary of the contract. We have stated that plaintiffs must show:
>
>> (1) that a contract exists between two persons or entities; (2) that the contract is valid and enforceable; and (3) that the contract was executed for the direct, and not incidental, benefit of the [third party]. A person is a direct beneficiary of the contract if the contracting parties intended to confer a legally enforceable benefit on that person. *It is not enough that the contract, in fact, benefits*

> *the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly.* In determining the intent of the contracting parties, the court should consider the circumstances surrounding the transaction as well as the actual language of the contract. When a third person seeks enforcement of a contract made between other parties, the contract must be construed strictly against the party seeking enforcement.

*Babb v. Bynum & Murphrey, PLLC*, 182 N.C. App. 750, 753-54, 643 S.E.2d 55, 57-58 (2007) (emphasis added) (internal citations and quotation marks omitted) (quoting *Country Boys Auction & Realty Co., Inc. v. Carolina Warehouse, Inc.*, 180 N.C. App. 141, 146, 636 S.E.2d 309, 313 (2006)).

Here, the 2011 Agreement and the 2014 Deed between Vidant, PDHC, and Pantego Creek were for their exclusive benefit and Plaintiffs were not parties or third-party beneficiaries thereto. Therefore, any benefit they derived from the agreements would have properly been deemed incidental. Indeed, to wit, the 2011 Agreement expressly provides that "[t]he Parties agree that this Agreement and all of the Transaction Agreements are not intended to be third party beneficiary agreements."

Without standing to challenge Vidant's, PDHC's, and Pantego Creek's 2011 Agreement and 2014 Deed, Plaintiffs cannot maintain an action for fraud against Vidant. Further, because they have failed to allege with any particularity how

Vidant's exercise of its express option to close the Hospital contained in the Mediation Agreement and referenced in the letter from Vidant's president and CEO to the Mayor of Belhaven constituted fraud, we hold that the trial court did not err in dismissing Plaintiffs' fraud claim against Vidant.

C.    Unfair and Deceptive Trade Practices

Plaintiffs next argue that the trial court erred by dismissing Belhaven's and the Community Board's unfair and deceptive trade practices claim against Vidant. We disagree.

> Under N.C.G.S. § 75-1.1, a trade practice is unfair if it is immoral, unethical, oppressive, unscrupulous, or substantially injurious to customers. A trade practice is deceptive if it has the capacity or tendency to deceive. It is well recognized, however, that actions for unfair or deceptive trade practices are distinct from actions for breach of contract, and that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under N.C.G.S. § 75-1.1.

*Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61-62, 418 S.E.2d 694, 700 (1992) (internal citations and quotation marks omitted). "The elements of a claim for unfair or deceptive trade practices are: '(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business.'" *Noble v. Hooters of Greenville (NC), LLC*, 199 N.C. App. 163, 166, 681 S.E.2d 448, 452 (2009) (quoting

*Furr v. Fonville Morisey Realty, Inc.*, 130 N.C. App. 541, 551, 503 S.E.2d 401, 408 (1998)).

Here, for the reasons discussed above, Belhaven and the Community Board have failed to allege any fraud or deception on the part of Vidant. Their claim for unfair and deceptive trade practices fails for this reason alone as they cannot establish the first element of the offense. Moreover, Plaintiffs do not have standing to bring an unfair and deceptive trade practices claim as there was no business relationship between Vidant and Plaintiffs, nor are they customers of Vidant, nor have they pled any injury in fact beyond the mere abstract allegation that "Plaintiffs suffered actual injury as a result of Vidant's conduct alleged herein." *See Carcano v. JBSS, LLC*, 200 N.C. App. 162, 175, 684 S.E.2d 41, 52 (2009) ("To have standing to bring a claim under the [Unfair and Deceptive Trade Practices] Act, the plaintiff must prove the elements of standing, including injury in fact. An injury in fact must be distinct and palpable, and must not be abstract or conjectural or hypothetical." (internal citation and quotation marks omitted)). Consequently, the trial court did not err in dismissing Belhaven's and the Community Board's unfair and deceptive trade practices claim against Vidant.

D.     Breach of Fiduciary Duty

Belhaven next contends that Pantego Creek owed it a fiduciary duty pursuant to the 2011 Agreement. However, as noted above, by that agreement's plain terms it

- 17 -

was not intended for the benefit of third-party beneficiaries and was exclusively between Pantego Creek, PDHC, and Vidant. Thus, no fiduciary relationship ever existed between Pantego Creek and Plaintiffs. *See Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) ("For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties.").

Therefore, Belhaven has failed to sufficiently plead a viable claim for breach of fiduciary duty against Pantego Creek. Plaintiffs' arguments on this issue are without merit.

E.     Section 99D-1 Claim

Plaintiffs next argue that the trial court erred in dismissing the NAACP's N.C. Gen. Stat. § 99D-1 claim against Defendants. We disagree.

It is well established that

> [a]n organization generally lacks standing to sue for money damages on behalf of its members if the damage claims are not common to the entire membership, nor shared equally, so that the fact and extent of injury would require individualized proof. Where an association seeks to recover damages on behalf of its members, the extent of injury to individual members and the burden of supervising the distribution of any recovery mitigates against finding standing in the association.

*Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 167, 552 S.E.2d 220, 226 (2001) (internal citation, quotation marks, and brackets omitted); *see generally*

*Landfall Grp. Against Paid Transferability v. Landfall Club, Inc.*, 117 N.C. App. 270, 450 S.E.2d 513 (1994).

N.C. Gen. Stat. § 99D-1(a)-(b1) provides, in pertinent part, the following:

> (a) It is a violation of this Chapter if:
>
> > (1) Two or more persons, motivated by race, religion, ethnicity, or gender, but whether or not acting under color of law, conspire to interfere with the exercise or enjoyment by any other *person or persons* of a right secured by the Constitutions of the United States or North Carolina, or of a right secured by a law of the United States or North Carolina that enforces, interprets, or impacts on a constitutional right; and
> >
> > (2) One or more persons engaged in such a conspiracy use force, repeated harassment, violence, physical harm to *persons* or property, or direct or indirect threats of physical harm to *persons* or property to commit an act in furtherance of the object of the conspiracy; and
> >
> > (3) The commission of an act described in subdivision (2) interferes, or is an attempt to interfere, with the exercise or enjoyment of a right, described in subdivision (1), of another person.
>
> (b) Any *person* whose exercise or enjoyment of a right described in subdivision (a)(1) has been interfered with, or against whom an attempt has been made to interfere with the exercise or enjoyment of such a right, by a violation of this Chapter may bring a civil action. . . .

> (b1) The North Carolina Human Relations Commission may bring a civil action on behalf, and with the consent, of any person subjected to a violation of this Chapter. In any such action, the court may restrain and enjoin such future acts, and may award compensatory damages and punitive damages to the person on whose behalf the action was brought. Court costs may be awarded to the Commission or the defendant, whichever prevails. Notwithstanding the provisions of G.S. 114-2, the Commission shall be represented by the Commission's staff attorney.

(Emphasis added.)

Based upon the plain and unambiguous language of the statute, it is readily apparent that the General Assembly only intended individually aggrieved persons or the North Carolina Human Relations Commission to have standing to bring an action under Section 99D-1. "Where the language of a statute is clear and unambiguous, this Court is bound by the plain language of the statute." *Riviere v. Riviere*, 134 N.C. App. 302, 304, 517 S.E.2d 673, 675 (1999); *see also Mangum v. Raleigh Bd. of Adjustment*, 196 N.C. App. 249, 255, 674 S.E.2d 742, 747 (2009) ("One of the long-standing rules of interpretation and construction in this state is *expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another."). Here, no named individual person or persons are parties to this lawsuit. Thus, the NAACP is without standing to assert a Section 99D-1 claim.

II.    Designation of Case as Exceptional

Plaintiffs' final argument on appeal, in essence, is that the Senior Resident Superior Court Judge for the Second Judicial District and the Chief Justice of the Supreme Court of North Carolina deprived Plaintiffs of their right to a fair and impartial hearing when the Chief Justice designated the present case as an exceptional case under Rule 2.1 of the General Rules of Practice for the Superior and District Courts upon the formal recommendation of the Senior Resident Superior Court Judge for the Second Judicial District and appointed Judge Albright to adjudicate the matter. For the first time on appeal, Plaintiffs now argue that they were prejudiced by Judge Albright's adjudication of the case and request that this Court vacate Judge Albright's order dismissing Plaintiffs' claims and remand for a new hearing with a judge that they would prefer over Judge Albright. On 25 July 2016, Defendants filed a motion to dismiss this portion of Plaintiffs' appeal.

We are without jurisdiction to consider this matter on appeal as the superior court had no jurisdiction to overrule a command of the Supreme Court and our jurisdiction is derivative of the superior court's jurisdiction. *See State v. Earley*, 24 N.C. App. 387, 389, 210 S.E.2d 541, 543 (1975) ("[T]he jurisdiction of the appellate courts on an appeal is derivative. If the trial court has no jurisdiction, the appellate courts cannot acquire jurisdiction by appeal."). Consequently, we conclude that Plaintiffs' argument on this issue is wholly meritless and grant Defendants' motion to dismiss this portion of Plaintiffs' appeal.

Conclusion

For the reasons stated above, the trial court's order is affirmed and Defendants' motion to dismiss the portion of Plaintiffs' appeal concerning the issues surrounding the designation of the case as exceptional is granted.

AFFIRMED IN PART; DISMISSED IN PART.

Chief Judge McGEE and Judge INMAN concur.